Keefer *v.* Lombardi, Appellant.

Argued November 18 and 19, 1953. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Horace N. Lombardi,* with him *Anthony J. Smith* and *Marvin D. Weintraub,* for appellants.

*Abe J. Goldin,* with him *W. Glenn George, M. Stuart Goldin* and *Goldin & Goldin,* for appellees.

OPINION BY MR. JUSTICE MUSMANNO, January 14, 1954:

On May 11, 1949, the defendants, as independent contractors, entered into a contract with the City of Philadelphia to construct a storm relief sewer in and about Wingohocking Street between 3rd and 9th Streets in Philadelphia. It was anticipated and planned that this job would necessitate the use of explosives and other blasting instrumentalities. It was also foreseen that, regardless of the care with which such dangerous properties would be used, the possibility always loomed of damage to private property in the area. The contract between the defendants and the City of Philadelphia provided, inter alia, "It is understood and agreed that the party of the second part shall be deemed and considered an independent contractor in respect to the work covered by this agreement, and shall assume all risks and responsibility for casualties of every description in connection with the work, except that he shall not be held liable or responsible for delays or damage to work caused by acts of God, acts of public enemy, acts of government, quarantine restrictions, general strikes throughout the trade, or freight embargoes not caused or participated in by the Contractor. Party of the second part shall have charge and control of the entire work until completion and acceptance of the same by party of the first part. *Party of the second part shall be alone liable and responsible for, and shall pay, any and all loss and damage sustained by any person or party either during the per-*

*formance or subsequent to the completion of the work covered by this agreement, by reason of injuries to person and damage to property, buildings and adjacent work, that may occur either during the performance or subsequent to the completion of the work covered by this agreement, or that may be sustained as a result or consequence thereof, irrespective of whether or not such injuries or damage be due to negligence or to the inherent nature of the work . . . . Party of the second part agrees to fully indemnify, protect and save harmless the City, the Director and his subordinates, from any and all liability and from all suits and actions of every kind and description brought or which may be brought against them or any of them . . . ."* (Emphasis supplied).

As the immediate and direct result of the subterranean violence resulting from the borings and blastings conducted by the defendants, the three plaintiffs in this case suffered serious losses in that their buildings and improvements were damaged and in some instances entirely destroyed, sidewalks caved in, and emergency repairs were made necessary. The plaintiffs initiated suits in assumpsit against the defendants averring that the damages and injuries done to their properties were caused by the inherent nature of the work performed by the defendants, and, at the ensuing trial, recovered verdicts.

The defendants appeal, urging judgment n.o.v. and a new trial. They contend that the plaintiffs did not allege or prove negligence and that the plaintiffs' remedy, if they had any at all, was through a Board of View assessing their respective damages. This contention lacks merit because the contract referred to carries a specific provision in which the defendants expressly assume liability for "any and all loss and damage sustained by any person or party . . . . that

may occur either during the performance or subsequent to the completion of the work . . . . or sustained as a result or consequence thereof, irrespective of whether or not such injuries or damage be due to negligence or to the inherent nature of the work . . ."

In *Del Pizzo v. Middle West Construction Co.*, 146 Pa. Superior Ct. 345, the plaintiffs brought actions in trespass to recover for damages sustained as the result of blasting performed by the defendant in the execution of a contract with the municipality. At the trial, the plaintiff did not prove any negligence on the part of the defendant but the verdict he obtained was affirmed because of the terms of the contract existing between the defendant and the municipality. "Defendant's contract with the city provided that '. . . the contractor shall be held responsible for, and shall make good any damage caused' by blasting. It is established by the decisions of this court in Postal Telegraph Co. v. Keystone State Construction Co., 63 Pa. Superior Ct. 486, and Hirsh v. McGovern, Inc., 100 Pa. Superior Ct. 1, that a contractor performing municipal work is not liable, without proof of negligence, in an action of trespass for damage caused by the concussion and vibrations of a blasting operation '. . . if the injuries were the direct, immediate and necessary or unavoidable consequences of the act of eminent domain, no matter how carefully performed, the remedy is against the municipality, ordinarily by proceedings before a board of viewers.' Hirsh v. McGovern, supra. *But, the contractor is liable where, as here, he has voluntarily* assumed the liability." (Emphasis supplied)

In so holding, the Superior Court followed this Court's decision in *Baier et ux. v. Glen Alden Coal Co.*, 332 Pa. 561. There, the plaintiffs instituted action of trespass to recover damages caused through the use of dynamite by the defendant's contractor when he drilled

a hole in the sidewalk fronting the plaintiff's house. Permission for the drilling had been granted to the defendant by resolution of the city council which provided that the work could only be done " 'with the understanding that the [defendant] . . . shall be liable for all damages to persons and property during the time said drill holes are being put down . . . .' " The defendant's attempt to escape liability on the ground that it had hired an independent contractor to do the work failed: ". . . the municipal legislation imposed a strict or absolute liability on defendant to pay all damages resulting from the exercise of the privilege granted by the city. The work could only be done (in the words of the resolution of city council) 'with the understanding that the [defendant] . . . shall be liable for all damages to persons and property during the time said drill holes are being put down . . . .' By going ahead, defendant assumed that obligation . . . Liability to them (plaintiffs) could not be evaded by employing a contractor, whatever obligation to defendant he might assume. Defendant's liability to plaintiffs being absolute, it is immaterial, if a fact, that defendant was not negligent . . . Liability did not . . . depend on negligence; nor was defendant's obligation to plaintiffs one of indemnity . . ."

The law of Pennsylvania is clearly in accord with the Restatement, Contracts (Section 145,) on this subject: "A promisor bound to the United States or to a State or municipality by contract to do an act or render a service to some or all of the members of the public, is subject to no duty under the contract to such members to give compensation for the injurious consequences of performing or attempting to perform it, or of failing to do so, unless, (a) *an intention is manifested in the contract, as interpreted in the light of the circumstances surrounding its formation, that the*

*promisor shall compensate members of the public for such injurious consequences . . . ."* (Emphasis supplied)

In illustration of the above principle, the following example, comparable to the facts in the case at bar, is given: "3. A, a municipality, enters into a contract with B, by which B promises to build a subway and to pay damages directly to any person who may be injured by the work of construction. Because of the work done in the construction of the subway, C's house is injured by the settling of the land on which it stands. D suffers personal injuries from the blasting of rock during the construction. B is under a contractural duty to C and D."

The plaintiffs here, as third party beneficiaries, were proper parties to institute suit. The citizens of any municipality are entitled to be protected by their local government in matters coming within the scope of governmental activity, and the drafters of the contract here under discussion possessed the authority to include as beneficiaries the inhabitants of the city for which they acted.

However, aside from this direct participation in the contract, the plaintiffs could sue in their capacity as resulting beneficiaries. Happily, Pennsylvania no longer stands outside the almost completely-sweeping circle of States which permit third party intervention in certain contracts. The turning point in our law on this subject came in the case of *Com. v. Great Am. Indemnity Co.*, 312 Pa. 183, where we overruled *Greene Co. v. So. Surety Co.*, 292 Pa. 304 and adopted the applicable rules in Restatement, Contracts, (cf. Sections 133, 135, 139, 345.)

The modern rule which recognizes a broader concept of realities in contractual relations was well expressed by Professor Arthur L. Corbin of the Yale Law School in language quoted with approval by Mr.

Justice MAXEY in the case of *Concrete Products Co. v. U. S. Fidelity & Guaranty Co.*, 310 Pa. 158: "'We should now start with the general proposition that two contracting parties have power to create rights in a third party. This has long been a general rule; it is not an "exception." "Privity" is not necessary; the third party need not be a "promisee," nor need he give consideration . . . The third party has an enforceable right if the surety promises in the bond, either in express words or by reasonable implication, to pay money to him . . . In the case of a surety bond for the payment of money, if there is a promise to pay money to an ascertainable person, the fact that he is a third person who gave no consideration for the promise does not prevent him from enforcing it . . . The words used in building contracts and in accompanying surety bonds are now usually such that they are, and should be, interpreted as a promise by the surety to pay laborers and materialmen in case of default by the contractor . . . In this class of cases it is sound policy to interpret the words liberally in favor of the third parties.' " Thus, if sureties may be required to pay laborers and materialmen in the event of default by contractors, certainly members of the public injured as a result of the workings of the contract do not stand on any lower level of suable rights.

Sec. 2, par. 29 of the Contract provides, inter alia, that the engineer having general supervision and direction of the work "shall adjust and decide any differences or conflicts that may arise between the contractor and other contractors for concurrent work." Because of this expression in the contract, the defendants advance the argument that a condition precedent required the plaintiffs to submit their claims to the engineer before proceeding with any legal action and, failing to do this, their present lawsuits must fail. But

a reading of the entire section and the contract itself confirms what the provision itself states that the engineer shall have jurisdiction over conflicts arising between "contractor and other contractors" with reference to the mode and manner of performance of the projected work. It says nothing about the rights of injured third parties.

We hold, therefore, that the action in assumpsit was proper and that the plaintiffs were not barred from recovery by virtue of the above section of the contract.

During the trial a city inspector was asked: "Were you, in your work as inspector, required to determine the size of the dynamite blasts?" whereupon he replied: "Yes, and we had the insurance companies." Appellants contend this reference to insurance constitutes irremediable error. As unfortunate as was the remark we do not believe that in its fragmentary character it prejudiced the defendants, especially in view of the fact that the court immediately instructed the jury: "Members of the Jury, this witness had inadvertently made reference to an insurance company. I do not know whether an insurance company is involved in this transaction or not, but in any event, we are not concerned with that, and whether there is or not, that is not to influence you one iota in your deliberations."

The appellants' contentions with regard to certain expert witnesses were well covered in the Opinion of the court below and we see nothing to be gained from a repetition of the lower court's able and proper disposition of those contentions. Nor do we see any merit to the appellants' complaint with regard to the hypothetical question propounded to the expert witnesses.

Judgment affirmed.