Walter TOZAR
v.
PHILCO CORPORATION, Defendant and
Third-party Plaintiff,

Oliver B. Cannon & Son, Inc.,
Third-party Defendant.

Civ. A. No. 14483.

United States District Court
E. D. Pennsylvania.

March 28, 1955.

Richter, Lord & Farage, Philadelphia, Pa., for plaintiff.

Michael A. Foley, Philadelphia, Pa., for defendant and third-party plaintiff.

Swartz, Campbell & Henry, Philadelphia, Pa., for third-party defendant.

LORD, District Judge.

This case is before the Court for determination of the legal rights and obligations of defendant, Philco Corporation,

hereinafter referred to as Philco, and of the third-party defendant, Oliver B. Cannon & Son, Inc., hereinafter referred to as Cannon, under the following facts which have been agreed upon by counsel for the parties:

The plaintiff's claim for damages arose out of injuries he received when an elevator in the Philco plant was raised by the Philco elevator operator while the plaintiff (an employee of Cannon) was painting in the shaft below. The raising of the elevator caused the balance weight to descend, striking the ladder on which the plaintiff was working, and inflicting the injuries for which this suit was instituted. In its third-party complaint against Cannon, Philco asserted that the injuries resulted from the joint negligence of both Philco and Cannon and that in any event, Cannon was liable to Philco for the whole of any judgment or settlement by reason of having agreed to indemnify Philco for any liability for injury or damage sustained in connection with the painting work to be done by Cannon at the Philco plant.

While the suit was pending, plaintiff settled his claim against Philco, the original defendant, for $25,000. Upon payment of this sum by Philco, a release was executed by plaintiff releasing both Philco and Cannon. The third-party defendant, Cannon, having received notice of the settlement, challenges neither the amount nor the wisdom of the settlement but denies liability to Philco in whole or in part.

Philco makes two claims: First, Philco states that Cannon, through negligence of an agent of Cannon other than the plaintiff, contributed to the plaintiff's injury and is thereby liable for contribution as a joint tort-feasor to the extent of the workmen's compensation payable to plaintiff. Second, Philco claims that regardless of negligence, Cannon is liable to Philco for the full amount of the settlement by reason of its written agreement to indemnify Philco against the latter's liability for this accident.

A further review of the facts and interpretation of the indemnity contracts is necessary to decide these claims. Cannon, as a subcontractor, contracted with Turner Construction Company (hereinafter called Turner) on April 15, 1952 to paint Philco's Plant No. 10. On July 25, 1952, prior to completion of the painting subcontract, the plaintiff, Tozar, and his foreman, John Kohl, both employees of Cannon, told Philco's elevator operator, Perone, that Tozar was about to start painting in elevator shaft No. 2 of the Philco plant. They told Perone to raise the elevator in that shaft up to a certain point, to lock it, and not to move it until Tozar told him it was safe to do so. Perone moved the elevator to the point directed, and agreed not to move it again until Tozar or Kohl told him it was safe to do so. About an hour and a half later, while Tozar was standing on a ladder below the elevator engaged in painting the shaft, the elevator operator, Perone, without instructions from Tozar or anyone else that it was safe to do so, and without observing whether Tozar was still in the shaft, raised the elevator to an upper floor. The balance weight descended, struck the ladder and caused the injuries to Tozar. Philco was at the time of the accident exclusively in charge of the plant, elevators and elevator shafts.

Philco contends that failure of Cannon to inform an agent of Philco in a responsible and supervisory position, who would have the authority and the ability to make certain that the elevators would not be operated in the shaft while plaintiff was working therein, constituted a negligent act. This Court cannot agree with this contention. The injured plaintiff and his foreman, employees of Cannon, informed Philco's elevator operator himself of plaintiff's presence, and told the elevator operator not to move the elevator without notifying plaintiff. Philco's operator agreed. What could be a more effective warning to Philco? Even if Cannon or plaintiff had informed a Philco supervisor of the work in the shaft, it is likely the supervisor could have done no more than give the operator the same warning that plaintiff gave him. There is certainly no negligence on Can-

non's part that is evident in this set of circumstances.

■ Philco's second claim concerning the indemnity agreements with Cannon is equally untenable. Philco states that the first clause of Article XV of the Subcontract dated April 15, 1952 constitutes an assumption on Cannon's part of liability as to third persons, otherwise the words are meaningless and superflouous. Looking at the whole Article,[1] it appears clear to this Court that the assumption of liability is promised only as to Turner. The subject of Article XV deals solely with the indemnification of Turner alone. Any other construction of the Article would have to be unreasonably strained.

The case of Keefer v. Lombardi, 1953, 89 Pa.Dist. & Co.R. 406, affirmed, 1954, 376 Pa. 367, 102 A.2d 695, cited by Philco in support of its contention, is quite dissimilar on the facts. In the Keefer case, the contract was intended to protect the public and was executed by a municipality for that purpose. The court allowed members of the public to sue as third-party beneficiaries. No such situation is involved in the present case. It is clear Philco was not to be indemnified by Cannon for Philco's own negligence. The indemnity clause stated in Article XV of the Subcontract has no bearing on Philco's relationship with Cannon. The Subcontract was between Cannon and Turner only.

■■ The final release and indemnity agreement of September 22, 1952[2] (executed by Cannon after the accident), with Philco as an indemnitee, does not *specifically* state that Philco will be indemnified for its own negligence. There is no clear intent evident that this was intended; without such clear intent, the contract of indemnity will not be construed to indemnify against the negligence of the indemnitee. Camden Safe Deposit & Trust Co. v. Eavenson, 1929, 295 Pa. 357, 364, 145 A. 434; Darrow v. Keystone Stores, Inc., 1950, 365 Pa. 123, 74 A.2d 176; Perry v. Payne, 1907, 217 Pa. 252, 66 A. 553, 11 L.R.A.,N.S., 1173. This agreement purports only to indemnify Philco and Turner for loss, expense,

1. "Article XV. The Subcontractor hereby assumes entire responsibility and liability in and for any and all damage or injury of any kind or nature whatever to all persons, whether employees or otherwise, and to all property, growing out of or resulting from the execution of the work provided for in this Contract or occurring in connection therewith, and agrees to indemnify and save harmless, Turner, its agents, servants and employees from and against any and all loss, expense, including attorney's fees, damages or injury growing out of or resulting from or occurring in connection with the execution of the Work herein provided for or occurring in connection with or resulting from the use by the Subcontractor, his agents or employees, of any materials, tools, implements, appliances, scaffolding, ways, hoists, elevators, works or machinery or other property of Turner, whether the same arise under the common law or the so-called Workmen's Compensation Law (which may be in effect in the locality in which the Work is situated) or otherwise. In the event of any such loss, expense, damage or injury, or if any claim or demand for such damages is made against Turner, its agents, serv-

ants or employees, Turner may withhold from any payment due or hereafter to become due to the Subcontractor under the terms of this Contract, an amount sufficient in its judgment to protect and indemnify it from any and all such claims, expenses, including attorney's fees, loss, damage or injury, or Turner, in its discretion may require the Subcontractor to furnish a surety bond satisfactory to Turner guaranteeing such protection, which bond shall be furnished by the Subcontractor within five days after written demand has been made therefor."

2. Final Clause:
"The Subcontractor further agrees to indemnify and hold harmless the Turner Construction Company and Philco Corporation or either of them from loss, expense, damage or injury as a result of claims arising out of or in connection with the execution of the work provided for in said contract, including any claim made by any laborer, contractor or material man that may have furnished labor or material directly or indirectly to the Subcontractor or by reason of any action brought or judgment recovered by such laborer, contractor or material man."

damage or injury to them "as a result of claims arising out of or in connection with * * * the work provided for in said contract, including any claim made by any laborer, contractor, or material man that may have furnished labor or material directly or indirectly to the sub-contractor * * *" Obviously it is a guarantee against claims for services and material which may be asserted by laborers and materialmen in the form of an action at law rather than in the form of the filing of a lien which is provided for in the preceding paragraphs. No mention of accident, personal injury, or negligence is made throughout this agreement, and it is apparent it was intended principally as a final receipt, a release of liens, and an indemnity against all claims (other than mechanics' liens) asserted for labor or material against either the owner or prime contractor.

In accordance with the above opinion, judgment will be entered in favor of third-party defendant, Oliver B. Cannon, Inc. An appropriate order will be submitted.