**COMMONWEALTH OF PENNSYLVANIA, By Herbert DENENBERG, Insurance Commissioner, et al., Plaintiffs,**

**v.**

**NATIONAL ASSOCIATION OF FLOOD INSURERS, an unincorporated association, et al., Defendants.**

**Civ. A. No. 73–683.**

United States District Court,
M. D. Pennsylvania.

July 1, 1974.

Kathleen Herzog Larkin, Deputy Atty. Gen.; Lawrence Silver, Deputy Atty. Gen., Chief, Litigation Divison, and Israel Packel, Atty. Gen., Harrisburg, Pa., for plaintiffs.

John G. Harkins, Jr., Philadelphia, Pa., Fred Speaker, Harrisburg, Pa., Marjorie G. Marinoff and Charles J. Bloom of Pepper, Hamilton & Scheetz, Philadelphia, Pa., for defendants National Flood Insurers Assn., General Accident Fire & Life Assur. Corp., Ltd. and Zurich Ins. Co.

S. John Cottone, U. S. Atty., and Laurence M. Kelly, Asst. U. S. Atty., Scranton, Pa., Bruce A. Menk and J. Charles Kruse, Dept. of Justice, Washington, D. C., for defendants James T. Lynn and the United States.

## OPINION AND ORDER

LATCHUM, Chief Judge.[1]

This action is before the Court on motions to dismiss filed by the defendants, National Flood Insurers Association

---

1. The Chief Judge of the Third Circuit, pursuant to 28 U.S.C. § 292(b), designated and assigned Chief Judge Latchum of the United States District Court for the District of Delaware to hold district court in the Middle District of Pennsylvania, to hear and dispose of this case.

("the Association"),[2] General Accident Fire and Life Assurance Corporation ("General Accident"), Zurich Insurance Company ("Zurich") (collectively the "Insurance Defendants"), and by the defendants, James T. Lynn, Secretary of Housing and Urban Development ("HUD") and the United States of America (collectively the "Federal Defendants").[3]

The complaint alleges that the suit is brought by the Commonwealth of Pennsylvania (the "Commonwealth") on its own behalf[4] and on behalf of its citizens[5] (collectively the "plaintiffs") for mandamus and injunctive relief and for the recovery of damages in excess of one billion dollars based on the defendants' alleged failure to perform statutory and contractual duties arising from the National Flood Insurance Act of 1968 (the "Act"), 42 U.S.C. §§ 4001–4128. The "in excess of the one billion dollar" recovery sought is to reimburse the Commonwealth and certain of its citizens, who sustained uninsured property losses as a result of floods which occurred in Pennsylvania in June 1972 and June 1973. The complaint alleges that, had the defendants carried out their statutory and contractual duties, that is, had they publicized and informed the public of the availability of flood insurance in Pennsylvania, the property losses which were sustained could have, and would have, been insured but were not.

Congress adopted the Act in 1968 when it realized that over the years many areas of the nation had suffered from flood disasters which not only created personal hardship and economic distress for many property owners but required unforeseen and expensive public relief assistance because flood risk insurance was unavailable to the public at economically feasible premium rates. The primary purposes of the Act were (1) to make flood damage insurance available in limited amounts for family residential and small business properties, (2) to encourage states and local communities to adopt land control regulations that would restrict the development of land prone to flood damage and to otherwise take steps that would minimize damage in areas already subject to flooding, and (3) to reduce the need for special Federal disaster relief measures by preventing any such assistance from being made available for any loss to the

2. The National Flood Insurers Association was erroneously named in the complaint as the National Association of Flood Insurers.

3. The complaint also purports to join a defendant class composed of approximately one hundred insurance company members of the Association under Rule 23, F.R.Civ.P., by naming General Accident and Zurich, two Association members, as alleged representative parties of the class. However, in view of the disposition of the present motions, it is unnecessary to consider whether the unnamed member companies are properly before the Court.

4. The Commonwealth purports to bring this action on its own behalf by Herbert Denenberg, Insurance Commissioner (who has since been replaced as a party plaintiff by William Sheppard, the present Insurance Commissioner), William Wilcox, Secretary of the Department of Community Affairs, and Israel Packel, Attorney General of the Commonwealth.

5. In addition to bringing suit on its own behalf, the Commonwealth also alleges that it sues (a) as a subrogor, apparently on the unpleaded theory that it incurred expenses in providing flood relief to its citizens, (b) on behalf of its citizens, five of whom are named, who sustained uninsured flood damage, either by the application of the *parens patriae* doctrine or through a "relation" procedure, or (c) apparently failing these, through resort to a class action device under Rule 23, F.R.Civ.P.

It must be noted that the Insurance Defendants have also moved to dismiss the action with respect to the Insurance Commissioner and Secretary of Community Affairs on the ground that they lack the authority to bring such an action and to dismiss the Commonwealth's claim asserted as "subrogor," in its *parens patriae* capacity, and "upon the relation" procedure on the ground that the complaint fails to state any claim upon which relief can be granted to the Commonwealth in any of these capacities. But in view of the disposition of this case on other grounds, these issues need not be considered.

extent it is covered by flood insurance under the program.[6]

The Act confers upon the Secretary of HUD the basic authority to establish and carry out a national flood insurance program that would enable interested persons to purchase flood insurance, to arrange for financial participation in the program on a risk-sharing basis by private insurance companies, and also to provide participation, other than on a risk-sharing basis, by other insurers, agents, brokers and insurance adjustment organizations.[7] Pursuant to this authority the Secretary of HUD entered into a contract (the "Agreement") with the Association, a pool of private insurance companies, for the purpose of providing flood insurance and of sharing with the Federal Government financial responsibility for the payment of claims for losses arising under the flood insurance program.[8]

## A. THE COMPLAINT IN GENERAL

The complaint consists of three counts. Count I is based on tort liability and alleges that all the defendants and their agents failed to perform statutory duties required by the Act. Count II avers a breach of the Agreement between the Secretary of HUD and the Association to the detriment of the Commonwealth and its citizens who are alleged to be third party beneficiaries of that contract. Count III seeks equitable relief in the nature of an injunction, specific performance and mandamus to assure that the defendants, particularly the Secretary of HUD, will carry out the alleged statutory and contractual duties in the future.

Since the Insurance Defendants and Federal Defendants have moved to dis-

miss the action on different grounds, the claims against each set of defendants will be considered separately.

## B. CLAIMS AGAINST THE INSURANCE DEFENDANTS

### 1. *Count I—Statutory Duties.*

■ Construing the complaint most liberally and favorably for the plaintiffs, Count I alleges that the Insurance Defendants had statutory obligations under the Act to publicize the availabilty of flood insurance and to authorize funding for expenses incurred to sell and service such insurance policies; that the Insurance Defendants and their agents failed to perform or negligently performed those duties with the result that the Commonwealth and the citizens it represents sustained uninsured flood losses in 1972 and 1973 to their properties which otherwise would have been insured had the Insurance Defendants performed their statutory duties.[9]

■ The Insurance Defendants have moved to dismiss Count I for failure to state a claim upon which relief can be granted because the Act imposes no such statutory duties upon them as alleged. The Court agrees.

A close reading and examination of the Act reveals there are no such duties imposed upon the Insurance Defendants. The Act authorizes the Secretary of HUD to encourage and otherwise assist insurance companies that meet the requirements of the Act to join together in a pool to provide flood insurance coverage and to participate financially in underwriting the risks assumed and in adjusting and paying claims for losses. The Act further authorizes the Secretary to prescribe appropriate require-

---

6. 42 U.S.C. § 4001; 2 U.S.Code Cong. & Admin.News (90th Cong.2d Sess. 1968) pp. 2965–2969.

7. 42 U.S.C. § 4011.

8. 42 U.S.C. §§ 4051, 4052; Docket Item 1 Ex. C.

9. As a threshold consideration, the Court finds that it has jurisdiction of the subject matter of the claim asserted in Count I against the Insurance Defendants pursuant to 28 U.S.C. § 1331(a) because the claim involves a sufficiently substantial and non-frivolous matter in controversy, exceeding $10,000 exclusive of interest and costs, which arises directly under the statutory law of the United States, viz. 42 U.S.C. § 4001 et seq. Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946).

ments for private insurers participating in the pool, including minimum capital, surplus or assets requirements.[10] The Act does not speak directly to the Insurance Defendants but speaks in terms of authority conferred upon the Secretary of HUD to enter into agreements with insurance industry pools to carry out the program.

Thus, 42 U.S.C. § 4052 provides that any agreement between the Secretary of HUD and the insurance pool must include terms and conditions relating to: the availability of risk capital; participation in premiums, and profits and losses; maximum amount of profit to be realized by the pool; payment of operating costs and allowances; premium equalization payments; and the contract may also include, as the Secretary deems necessary, provisions respecting a continuity of flood insurance coverage and participation in the pool by all qualified insurers. The Secretary is further authorized by 42 U.S.C. § 4081 to enter into agreements "which may, from time to time, be necessary for the purpose of utilizing, on such terms and conditions as may be agreed upon, the facilities and services of any insurance companies or other insurers, insurance agents and brokers, or insurance adjustment organizations . . . ." In addition, under 42 U.S.C. § 4082 the Secretary has authority to use insurers or others in the private insurance industry to receive and handle claims and payments made under the policies issued.

It is this type of agreement made by the Secretary of HUD with the Insurance Defendants, not the Act, which imposes duties upon the Insurance Defendants if any exist. The following excerpts from the Act's legislative history confirm this conclusion:

"The Secretary will enter into an agreement with any such pool and the agreement will form the basis of the relationship between the Government and the industry.[11]

"Relations between the Government and the insurance pool will be governed by an agreement which will set forth in detail the conditions of operation.[12]

"Their [the participating members'] relationship with the pool will be governed by an agreement, the conditions of which will be subject to approval by the Secretary of Housing and Urban Development.[13]

"The Government-pool relationship will be governed by an agreement setting forth financial and other arrangements." [14]

Neither the complaint nor plaintiffs' brief point to any provision of the Act which places a statutory duty upon the Insurance Defendants. Every section cited by the plaintiffs is directed toward actions of the Secretary of HUD, and in no way can those sections be read as imposing any statutory obligation upon the Insurance Defendants.

Since it is clear from the face of the Act that it imposes no duty, direct or implied, upon the Insurance Defendants, Count I fails to state a claim upon which relief can be granted and that count will be dismissed with respect to the Insurance Defendants.

### 2. *Count II—Contractual Duties.*

 Count II of the complaint against the Insurance Defendants is based on an alleged contractual obligation arising out of the Agreement entered into between the Secretary of HUD and the Association under which the Commonwealth and those it represents are allegedly third-party beneficiaries. Although Count II of the complaint is far from concise as to the contractual duty breached, it becomes clear from the Commonwealth's arguments

---

10. 42 U.S.C. § 4051.

11. 2 U.S.Code Cong. & Admin.News (90th Cong.2d Sess.1968), p. 2971.

12. Id. at p. 2972.

13. Id.

14. Id.

that Count II is founded on the Association's failure to publicize the availability of flood insurance as allegedly required by the Agreement.[15]

The Insurance Defendants have moved to dismiss Count II for failure to state a claim upon which relief can be granted, first, because the Association assumed no duty to publicize by the Agreement, and second, because no actionable third-party right arises out of a contract with a governmental entity of the kind here involved.

The language of the Agreement upon which the Commonwealth relies to support its claim that the Insurance Defendants had the duty to publicize consists of the following provisions:

1) a portion of the preamble which reads:

"Whereas, the Association has been formed to constitute a pool prepared to provide such insurance and to assume such a portion of responsibility, on such terms and conditions as may be agreed upon from time to time by the Administrator [who was delegated authority by the Secretary to carry out the Flood Act] and the Association;" (Brackets added);

2) a portion of Article I—Membership, Continuity of Coverage, Co-operation with Others, and Program Limitations—which reads:

"Subject to the right of its members under the Association's Constitution to reduce or terminate their participation, the Association will exercise its best efforts to provide a continuous program of flood insurance pursuant

to the Act and the terms of this Agreement."

3) a portion of Article VI—Records, Audits, and Reports—which reads:

"1. The Association . . . shall keep such records as may be prescribed by the Administrator, including records which fully disclose the total cost of the program undertaken or services being rendered . . .

"2. The Secretary . . . shall have access . . . to any books, documents, papers and records of the Association . . . that are pertinent to the program undertaken or the services being rendered.

"3. The Association shall make periodic reports . . . on the operation of the program by the Association;" and

4) a portion of Article VIII—Definitions—which reads:

"8. 'Operating costs' means all costs for an accounting period incurred in the offering, selling, and servicing of policies of flood insurance . . . ."

Considering these provisions *seriatim*, the first, aside from being merely a part of the preamble, cannot possibly be held to mandate an affirmative duty on the part of the Association to publicize the availability of flood insurance. Instead, it simply recites the general purpose for forming the Association and the fact that the Association is to assume a portion of the responsibility for the flood insurance program on such terms and conditions as are agreed upon with the Secretary or his delegate. Thus, it is the "terms and conditions" of the

---

15. The Court concludes that it has jurisdiction under 28 U.S.C. § 1331(a) to entertain the Count II claim asserted by the plaintiffs as third-party beneficiaries under the Agreement between the Secretary of HUD and the Association, because, in determining the rights and obligations of parties to contracts through which the United States is exercising its constitutional functions, one must refer to the federal common law and not to any state law, United States v. Seckinger, 397 U.S. 203, 209, 90 S.Ct. 880, 25 L.Ed.2d 224 (1970); United States v. Allegheny County, 322 U.S. 174, 183, 64 S.Ct. 908, 88 L.Ed. 1209 (1944), and logically federal common law should be equally determinative of the rights of third-party beneficiaries under such government contracts. Since federal common law is the applicable decisional body of law for reference, Count II can be said to arise under federal law for the purposes of subject matter jurisdiction. Illinois v. Milwaukee, 406 U.S. 91, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972); Ivy Broadcasting Co. v. American Tel. & Tel. Co., 391 F.2d 486 (C. A. 2, 1968).

Agreement which must be searched in order to ascertain what specific contractual duties the Association assumed.

The second provision relied upon by the Commonwealth, while obligating the Association to use its best efforts to provide continuity to the program does not specifically define what the "program of flood insurance" entails, much less specifically require an affirmative duty to publicize. Instead of defining a particular program, the second provision merely requires the program, whatever it may entail, to be fashioned pursuant to the Act and the terms of the Agreement. Again referring to the Act as has been noted, it does limit the terms and conditions under which the Association may provide such insurance [16] but it does not impose any affirmative obligation upon the Association to publicize. The only provision of the Act which is at all concerned with publicity is found in 42 U.S.C. § 4020. That section calls upon the Secretary, not the Association, from time to time, to take such action as may be necessary to make information available to the public.

Returning then to the third provision of the Agreement relied upon by the Commonwealth, it is found that it also imposes no duty upon the Association to publicize. The fact that the Association is required to keep records and make them available to the appropriate authorities can not under any stretch of the imagination be construed as requiring the Association to publicize flood insurance.

The final provision relied upon by the Commonwealth simply defines those items of expense which may be included as "operating costs" under the Agreement. Hence, assuming without deciding, that the cost of "offering, selling and servicing policies" could include the cost of publicizing the availability of flood insurance, thus giving the Association the *right* to include publicity costs as an item of "operating costs" should it choose to publicize the program, that still does not create an affirmative *duty* upon the Association to publicize. The Commonwealth's argument that this provision of the Agreement obligates the Association to publicize completely fails to recognize the distinction between a *right* and a *duty*. See Hohfeld, W., Fundamental Legal Conceptions (4th ed. 1966).

It is not surprising that the Agreement does not impose a duty to publicize upon the Association in view of the language contained in Article II of the Agreement which reads:

"The Association will use its best efforts to arrange for the issuance of policies of flood insurance to any person or organization qualifying for such coverage under regulations prescribed by the Administrator in accordance with Section 1306(a) of the Act, [42 U.S.C. § 4013(a)] *pursuant to applications submitted by any such person or organization . . . .*"
(Emphasis and brackets added.)

The language clearly envisions that the Association's obligations to issue flood insurance policies only begin after applications for insurance are received and not before. Indeed, the regulations promulgated by the Secretary of HUD pursuant to 42 U.S.C. § 4013(a) tend to confirm this conclusion, first, by reiterating in Part 1912—Sale of Insurance and Adjustment of Claims—that the Association's duties arise upon submission of an application [17] and, second, by affirmatively directing that state participation should include "[p]roviding local communities with information on the program . . .," while being con-

---

16. For example, 42 U.S.C. § 4026 places a definite limit on the total amount of flood insurance which can be in force at any one time.

17. "The Association will use its best efforts to arrange for the issuance of flood insur-

ance to any person qualifying for such coverage under Parts 1911 and 1914 of this subchapter who submits an application. . . . ." 24 CFR § 1912.2(d) (1973). (Emphasis added.)

spicuously silent about any obligation on the part of the Association to provide information to the public.[18]

Accordingly, the Court finds that the Agreement imposed no contractual obligation upon the Association to publicize the availability of flood insurance.

Moreover, even if a contractual undertaking to publicize is *assumed* to exist by implication, Count II would still be deficient as a matter of law, because, being a contract with a governmental entity, here the United States, the Agreement would provide no actionable third party rights to the Commonwealth or to those it represents.

The general rule relating to the rights of third parties with respect to government contracts is outlined in the Restatement of Contracts § 145 as follows:

"A promisor bound to the United States or to a State or municipality by contract to do an act or render a service to some or all of the members of the public, is subject to no duty under the contract to such members to give compensation for the injurious consequences of performing or attempting to perform it, or of failing to do so, unless,

(a) an intention is manifested in the contract, as interpreted in the light of the circumstances surrounding its formation, that the promisor shall compensate members of the public for such injurious consequences, or

(b) the promisor's contract is with a municipality to render services the non-performance of which would subject the municipality to a duty to pay damages to those injured thereby."

Since this Rule has been expressly adopted in numerous jurisdictions,[19] it is reasonable to apply its principles and guidelines as a part of federal common law.

The basic premise of the Restatement Rule is that one making a promise to a governmental entity is *not* liable to third parties unless (a) an intention is manifested that members of the public be compensated nor merely "benefited," or (b) the promise is made to a *municipality*, the nonperformance of which would subject the municipality to a duty to pay damages to those injured thereby. Because the present Agreement is with the United States, not a municipality, Clause (b) may be disregarded.

Thus, the question becomes whether or not an intention is manifested in the Agreement between the Secretary of HUD and the Association, as interpreted in the light of surrounding circumstances, that the Association should be liable to the public for injuries resulting from the negligent performance or nonperformance of the assumed "duty" to publicize flood insurance.

It is quite clear that Clause (a) of the Rule 145 requires something more than a simple intent of the parties to a

18. 24 CFR § 1910.25(a)(13).

19. Air Lines, Inc. v. Town of Islip, 229 N.Y. S.2d 117 (Sup.Ct., 1962); Ultramares Corp. v. Touche, 255 N.Y. 170, 174 N.E. 441 (Ct. App., 1931); Moch Co. v. Rensselaer Water Co., 247 N.Y. 160, 159 N.E. 896 (Ct.App., 1928); Congdon v. Oneida County Grange Co-op Fire Ins. Co., 203 Misc. 98, 114 N.Y. S.2d 167 (Sup.Ct., 1952); Whitmore v. Fago, 93 N.Y.S.2d 672 (Sup.Ct., 1949); Oman Construction Co. v. Tennessee Central Ry. Co., 212 Tenn. 556, 370 S.W.2d 563 (1963); Collins Construction Company v. Taylor, 372 S.W.2d 548 (Ct.Civ.App.Texas, 1963); City and County of San Francisco v. Western Air Lines, Inc., 204 Cal.App.2d 105, 22 Cal.Rptr. 216 (Dist.Ct.App.1962); Davis v. Nelson-Deppe, Inc., 91 Idaho 463, 424 P. 2d 733 (1967); Pacific Northwest Bell Telephone Co. v. DeLong Corp., 246 Or. 369, 425 P.2d 498, 500 (1967); Keefer v. Lombardi, 376 Pa. 367, 102 A.2d 695 (1954); Townsend v. City of Pittsburgh, 383 Pa. 453, 119 A.2d 227 (1956); Malesev v. Garavaglia, 12 Mich.App. 282, 162 N.W.2d 844 (Ct.App., 1968); United Dispatch v. E. J. Albrecht Co., 135 W.Va. 34, 62 S.E.2d 289 (1950).

contract to benefit some third party. As explained by Judge Cardozo in Ultramares v. Touche, 225 N.Y. 170, 174 N.E. 441 (Ct.App.1931):

"In the field of the law of contract . . . today the beneficiary of a promise, clearly designated as such, is seldom left without a remedy. . . . Even in that field, however, the remedy is narrower where the beneficiaries of the promise are indeterminate or general. Something more must then appear than an intention that the promise shall redound to the benefit of the public or to that of a class of indefinite extension. The promise must be such as to 'bespeak the assumption of a duty to make reparation directly to the individual members of the public if the benefit is lost.'" 174 N.E.2d at 445.

The requirement that there be an express intent to be held liable to third parties is echoed again and again in the above cited cases. For example:

"No such action is maintainable in the absence of a manifest intent on the part of the defendant to be answerable to the individual members of the public for any loss they might sustain for the defendant's failure to fulfil its promise." Eastern Air Lines, Inc. v. Town of Islip, 229 N.Y.S.2d 117 (Sup.Ct.1962).

"[The contract] . . . failed to disclose any manifested intent that members of the public were to secure any rights thereunder for damages that may have arisen by reason of the defendant's failure to comply with its specific terms." Davis v. Nelson-Deppe, Inc., 91 Idaho 463, 424 P.2d 733 (1967).

"No where in the contract are there any words evincing an intention to make Johnson liable under the circumstances of this case." Townsend v. City of Pittsburgh, 383 Pa. 453, 119 A.2d 227 (1956).

The present Agreement contains no words evincing a *duty* to publicize, much less words evincing an intention to make the Association or its members liable to third parties for not publicizing the availability of flood insurance. Even if the Agreement were contorted to suggest some implied duty to publicize, that would still fall far short of a manifestation that the Association intended to be liable to third parties for a failure to so publicize as is required by § 145(a).

Weinberger v. New York Stock Exchange, 335 F.Supp. 139 (S.D.N.Y., 1971) is cited by the Commonwealth as authority for the right to recover in the present case. Quite the opposite is true. *Weinberger* is but one more case to be added to the long list cited above which applies the Rule set forth in § 145(a). In determining whether the requisite manifestation of intent to be liable to third parties was present, the Court in *Weinberger* looked to two "sources," although it is not clear what weight was given each "source."

The first "source" was a statute which expressly required the defendant Stock Exchange, in order to become registered as a securities exchange, to enter a contract with the Securities Exchange Commission whereby the Stock Exchange was specifically required to enforce compliance by its members with the provisions of the Securities Exchange Act of 1934. The Court found that the statute was intended for the *direct* benefit of third party investors and that there would have been no reason to require the contract if the members of the investing public could not claim thereunder. The question, of course, is what is meant by a "direct" benefit.

Guidance has been given by the United States Supreme Court in German Alliance Insurance Company v. Home Water Supply Co., 226 U.S. 220, 33 S.Ct. 32, 57 L.Ed. 195 (1912). There the Court held that in the case of a government contract, third parties must have a "direct" benefit in the performance of the contract in order to recover. In *German Alliance* a city, pursuant to an ordinance, had contracted with the defendant to supply water, including that for fire protection, although the government

was under no obligation to do so just as in the present case the United States contracted with the Association to participate in providing for a flood insurance program although there was no obligation upon the United States to establish such a program. The interest which the affected citizens had in *German Alliance* "was indirect,—that incidental benefit only which every citizen has in the performance of every other contract made by and with the government under which he lives. . . ." The same is true of the interest that the Commonwealth and its citizens have in the present case.

Thus, it cannot be said the Act under consideration intended to confer a "direct" benefit upon the Commonwealth and its citizens in the performance of the Agreement although the Act did benefit them incidentally in the same sense that the taxpayers in *German Alliance* were benefited from the supply of water for fighting fires.

The second source looked to in *Weinberger* was a previous interpretation of the statute by the courts giving judicial meaning to legislative intent. The statute involved in *Weinberger* had previously been held by the Second Circuit Court of Appeals in Baird v. Franklin, 141 F.2d 238 (C.A.2, 1944) to have imposed a statutory duty upon the Stock Exchange to enforce compliance by its members of the Securities Exchange Act of 1934 and the rules promulgated thereunder. The Court there indicated that the Securities Exchange Act itself afforded a remedy to members of the public who sustained damages as a result of a violation of that Act. But there is no such prior holding relating to the Act here in question. Instead this Court has heretofore held that the Act imposes no statutory duty upon the Association to publicize much less manifest an intent that the Association be held liable to third parties for failure to publicize. Thus, where the Stock Exchange in *Weinberger* was already liable to third

parties for any breach of a statutory duty, the Association is not, and the imposition of such a non-coterminous contractual duty can have the disruptive effect of an unexpected civil liability which the Rule in § 145(a) of the Restatement was intended to prevent.[20]

The Court, therefore, concludes that the Agreement created no contractual duty upon the Association to publicize the availability of flood insurance, and even if such a duty were somehow implied from the Agreement, it utterly fails to show any manifestation of intent on the part of the Association to be liable to third parties for the non-performance of any such implied duty. Accordingly, Count II will be dismissed as to the Insurance Defendants for failure to state a claim upon which relief can be granted.

### 3. *Count III—Equitable Relief.*

Since the two substantive counts of the complaint have been found to be without foundation and fail to state claims against the Insurance Defendants upon which relief can be granted, Count III must also fall for the same reasons because the equitable relief therein sought presumes the validity of the claims asserted in Counts I and II. Count III therefore will also be dismissed as to the Insurance Defendants.

### C. CLAIMS AGAINST THE FEDERAL DEFENDANTS

#### 1. *Count I—Tort Claim.*

Count I, basing jurisdiction on the Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680, alleges that the Federal Defendants were "statutorily obligated to make flood insurance information available, to authorize funding for expenses incurred to sell and service of flood insurance, and to assure through agreements and contracts . . . that flood insurance be provided for all who need it", and that the Federal Defendants failed to perform those duties with the

---

20. See *Weinberger*, supra, 335 F.Supp. at 144 n. 10.

result that the Commonwealth and its citizens sustained uninsured flood losses to their properties in 1972 and 1973 in excess of one billion dollars for which recovery is sought. The Federal Defendants have moved to dismiss Count I as to them on the ground that the Court lacks jurisdiction because the Commonwealth failed to meet the jurisdictional requirements of 28 U.S.C. § 2675(a).

The latter provision, which dictates the terms and conditions under which the United States waives its sovereign immunity with respect to tort claims asserted against it, prohibits the institution of any such tort claim:

> ". . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section."

The language of 28 U.S.C. § 2675(a) is clear and unambiguous and phrased in mandatory terms. It provides that the filing of a proper administrative claim is an absolute jurisdictional prerequisite, which cannot be waived, to filing and maintaining an action under the Federal Tort Claims Act. Bialowas v. United States, 443 F.2d 1047, 1049 (C.A.3, 1971); Best Bearings Co. v. United States, 463 F.2d 1177, 1179 (C.A.7, 1972). Thus the question becomes—did the Commonwealth and its citizens present an administrative claim as required by law which would give them the right to maintain the present action against the Federal Defendants for alleged tortious conduct.

By virtue of 28 U.S.C. § 2672 the head of each federal agency is authorized, in accordance with regulations prescribed by the Attorney General, to process and settle claims against the United States for injury or damage caused by an employee of the agency while acting within the scope of his employment.[21] Those regulations provide that:

> "For purposes of the provisions of section 2672 of Title 28, United States Code, a claim shall be deemed to have been presented when a Federal agency receives from a claimant, his duly authorized agent or legal representative, an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident. If a claim is presented to the wrong Federal agency, that agency shall transfer it forthwith to the appropriate agency." 28 CFR § 14.2(a) (1973).

As to those who may file a claim, the regulations provide:

> "(a) A claim for injury to or loss of property may be presented by the owner of the property, his duly authorized agent or legal representative.
>
> \* \* \* \* \* \*
>
> "(e) A claim presented by an agent or legal representative shall be presented in the name of the claimant, be signed by the agent or legal representative, show the title or legal capacity of the person signing, and be accompanied by evidence of his authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian, or other representative." 28 CFR § 14.3 (1973).

Thus, the Federal Regulations implementing the procedure for presenting a claim to the appropriate Federal agency require, among other things, (1) that written notification of a property damage claim be given either (a) by the owner of the property, or (b) by the owner's duly authorized agent or legal representative, (2) that a claim present-

---

**21.** 28 U.S.C. § 2672 requires the additional written approval of the Attorney General for claims over $25,000.

ed by an owner's agent or legal representative be presented in the owner's name, be signed by such agent or legal representative in that capacity and be accompanied by documentary evidence showing his authority to act as such owner's agent or legal representative, and (3) that the property damage claim be for a sum certain.

The plaintiffs contend that they submitted a proper claim to the appropriate Federal agency and that the claim was finally denied by the agency in writing. The Commonwealth argues that a letter dated October 3, 1973 by Herbert Denenberg ("Denenberg")[22] to the Secretary of HUD was a presentment of the claim and that a reply letter dated October 31, 1973 from Irving P. Margulies ("Margulies"),[23] Associate General Counsel for HUD, was a final denial of the claim.

The Denenberg letter began:

"Pursuant to 28 U.S.C. § 2675 demand is hereby made on behalf of the citizens, residents and taxpayers of the Commonwealth of Pennsylvania for money damages for injury and loss of property caused by the negligent and wrongful acts and omissions of employees of the Government of the United States while acting in the scope of their office and employment.

"As you know, Pennsylvania suffered the greatest disaster in its history in June of 1972 as a result of hurricane Agnes. Both before and since that time Pennsylvania and its citizens have been harmed by flooding, most recently in June 1973. Although the exact amount of the damages cannot be calculated at this time, reasonable estimates exceed one billion dollars ($1,000,000,000.00) and demand is therefore made for that amount.

"The damages sought equal the amount of uninsured property losses resulting from flooding during June, 1972 and June, 1973 in the Commonwealth of Pennsylvania which losses could have been insured under the Na-

tional Flood Insurance Act of 1968, 42 U.S.C. § 4001 et seq. (Supp. 1973)."

The Denenberg letter continues by reciting the alleged duties of various HUD officers and departments under the Act and how their failure to perform their duties purportedly caused the claimed damages exceeding one billion dollars. In closing, the letter suggested that the claim be settled by HUD establishing a trust fund in an amount equal to the relief sought and that such fund be administered by officers of the Commonwealth who would hear claims and distribute the funds to those persons who suffered from the tortious acts of the Secretary of HUD and his agents.

The Margulies reply informed Denenberg first that:

"Under identical regulations of both this Department and the Department of Justice (24 CFR 17.3(a) and (e) and 28 CFR 14.3(a) and (e), respectively), you have no standing to file this claim. Subparagraphs (a) and (e) of the aforecited regulations read as follows:

"(a) A claim for injury to or loss of property may be presented by the owner of the property, his duly authorized agent or legal representative.

\* \* \* \* \* \*

"(e) A claim presented by an agent or legal representative shall be presented in the name of the claimant, be signed by the agent or legal representative, show the title or legal capacity of the person signing, and be accompanied by evidence of his authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian, or other representative.

"It is clear that you have not been designated as agent or legal representative by any particular citizen(s), taxpayer(s), or resident(s) of Pennsylvania who might have sustained uninsured losses, but have instead filed

22. Docket Item 1, Ex. A.

23. Docket Item 1, Ex. B.

what might be considered a 'class action' claim on behalf of unknown possible claimants."

second that:

" . . . even if there were legal means of delegating the Secretary's settlement authority to you and your colleagues, your allowance of any claim in excess of $1,000 would be subject to review by this office and, if in excess of $25,000, by the Attorney General."

and third that:

" . . . decisions as to what actions to take with regard to implementation of the flood insurance program in Pennsylvania were discretionary. Under 28 U.S.C. 2680(a), any claim based upon the exercise of performance or the failure to exercise or perform a discretionary function or duty is not subject to the Federal Tort Claims Act."

The Margulies reply concluded: [24]

"Accordingly, as indicated above, there is no legal basis for payment of the claim you have presented, and it is hereby denied.

"You are advised that you have the right to file suit against the United States—not the Secretary of the Department of Housing and Urban Development—in an appropriate United States District Court within six months of the date of mailing of this letter."

■ Turning now to an analysis of the Denenberg letter, it is quite clear that it was legally deficient as a proper administrative claim in several respects.

First, the claim was not presented by the owners of the damaged property. The opening sentence expressly states that Denenberg was purporting to present a claim "on behalf of the citizens, residents and taxpayers of the Commonwealth." No claim, as now asserted in Count I against the Federal Defendants, was presented on behalf of the Commonwealth itself. As a result of § 2675(a), this Court is without jurisdiction over such a claim. Thus, the Commonwealth's claim asserted in Count I on its own behalf against the Federal Defendants will be dismissed.

Second, since no claim was presented by the individual owners of the damaged property as required by 28 CFR 14.3(a), we must ask whether the claim was validly presented in the names of the owners by their authorized agent or legal representative. The fact is, the names of no owners are mentioned in the Denenberg letter. While the words "citizens, residents and taxpayers" referred to may describe an ultimately discernible class of claimants, the regulations make no provision for filing "class action" administrative claims against the United States and this Court is unable to find any authority for judicially creating such a provision where the regulations expressly require that " . . . a claim presented by an agent or legal representative shall be presented in the *name* of the claimant. . . . " (Emphasis added). The conclusions is unescapable that the claim attempted to be presented by the Denenberg letter on behalf of unnamed "citizens, residents and taxpayers" failed to meet the requirements of 28 CFR § 14.3(e).

Third, the Denenberg letter was unaccompanied by any documentary evidence of his authority to present claims on behalf of unnamed owners as required by 28 CFR § 14.3(e). For example such evidence may come in the form of a court certificate or order showing the legal representative to be a duly appointed executor, administrator, guardian or

---

24. Plaintiffs advanced the argument that the Federal Defendants are now estopped from denying that the claim contained in Denenberg's letter was not a proper claim because the claim was considered and denied by the Margulies letter. The Court is unable to agree. The claim was rejected administratively because it did not conform to the applicable regulations governing the submission of property claims. In any event, there can be no estoppel or waiver of these jurisdictional prerequisites to suit. Driggers v. United States, 309 F.Supp. 1377, 1379 (D.S.C.1970).

trustee or perhaps showing that an agent was acting under an owner's power of attorney. The plaintiffs argue that Denenberg's title as Insurance Commissioner shown on his official stationery was sufficient "evidence" of his authority to act as agent or legal representative of the unnamed property owners. This is simply not so since his authority to act on behalf of unnamed private owners of property could not be assumed from his title alone. Consequently, because the letter was unaccompanied by a sufficient showing of his authority to present the claim for a class of unnamed individual property owners, either in documentary or statutory form, the letter did not amount to a valid administrative claim. Gunstream v. United States, 307 F.Supp. 366, 368 (C.D. Cal.1969).

Finally, the Denenberg letter failed as a legal administrative claim because it did not present a claim for money damages in a *sum certain* as required by 28 CFR § 14.2(a). Instead, the letter states that "the damages cannot be calculated at this time" and that "reasonable estimates exceed one billion dollars." Demand was therefore made for that amount. Specifically, Denenberg requested that HUD establish "a trust fund in an amount equal to the relief sought to be administered" by the Commonwealth. The Commonwealth was in fact seeking an amount great enough "to cover damages suffered resulting from the tortious acts of the Secretary and his agents." The amount claimed was completely open-ended, indefinite and not for a sum certain as required by 28 CFR § 14.2(a). Such a demand does not constitute a valid administrative claim. Bialowas v. United States, *supra*; Avril v. United States, 461 F.2d 1090 (C.A.9, 1972); Jordon v. United States, 333 F.Supp. 987 (E.D.Pa.1971), aff'd 474 F.2d 1340 (C.A.3, 1973).

These deficiencies in submitting the administrative claim as required by 28 U.S.C. § 2675(a) and the regulations thereunder compel the dismissal of Count I on jurisdictional grounds with respect to the Federal Defendants.

### 2. *Count II—Contract Claim.*

Count II, basing jurisdiction on the Tucker Act, 28 U.S.C. § 1346(a)(2), attempts to state a claim against the Federal Defendants under a third-party beneficiary contract theory in the same manner it asserted liability in that count against the Insurance Defendants. The Federal Defendants have moved to dismiss Count II on the ground that this Court lacks jurisdiction to consider the claim which exceeds $10,000. The Tucker Act, 28 U.S.C. § 1346(a), reads in part as follows:

"(a) The district courts shall have original jurisdiction, concurrent with the Court of Claims, of:

\* \* \* \* \* \*

(2) Any other civil action or claim against the United States, *not exceeding $10,000 in amount, founded either* upon the Constitution, or any Act of Congress, or any regulation of an executive department, *or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort* . . . ." (Emphasis added).

Count II asserts a claim against the Federal Defendants based on contract principles in a sum exceeding one billion dollars. Since the recovery sought exceeds the $10,000 jurisdictional amount allowed by 28 U.S.C. § 1346, jurisdiction over this count is explicitly withheld from District Courts. Akin Mobile Homes, Inc. v. Secretary of Housing & Urban Development, 475 F.2d 1261 (C. A.5, 1973); State of Minnesota v. Weinberger, 359 F.Supp. 789 (D.Minn. 1973). Consequently, Count II against the Federal Defendants will be dismissed for lack of jurisdiction.

### 3. *Count III—Mandamus Relief.*

Count III seeks mandamus relief against the Secretary of HUD "to com-

pel him to perform those statutory duties which he owes to plaintiff and those plaintiff represents and which were conferred upon him by the National Flood Insurance Act, 42 U.S.C. § 4001 et seq." Although unpleaded, the Commonwealth explains in its brief that jurisdiction is predicated upon 28 U.S.C. § 1361 and that the scope of the Secretary's obligations are set forth in Paragraphs 32–40 of the complaint.

Paragraph 32 refers to the Secretary's *authorization* to carry out the Act provided by 42 U.S.C. § 4011(a) and further recites various purposes of the Act. Paragraph 33 simply makes mention of the fact the Agreement was entered into and that the Association was formed pursuant to the *authority* given the Secretary by §§ 4051 and 4052. Paragraph 34 refers to § 4020, which concerns dissemination of flood insurance information, begins with the discretionary language "[t]he Secretary shall from time to time take such action as may be necessary . . ."

Paragraph 35 states "the Secretary of HUD is required by statute to negotiate with the Association regarding an allocation of operating costs," without citing any statutory section and only obliquely referring to some "duty" imposed by § 4020. Paragraph 36 refers to § 4052(c) which begins with the clearly discretionary language "[i]n addition, such agreements shall contain such provisions as the Secretary finds necessary . . ." Paragraph 37 is nothing more than a recitation of a portion of § 4082(d) which prohibits the Secretary from entering any contract unless the Secretary makes certain findings, but it is not alleged that the Secretary violated the prohibitions of that section. Finally, Paragraphs 38, 39 and 40 refer to no particular statutory sections.

It is clear from reading the Commonwealth's complaint and the statutory sections cited therein that the Commonwealth has completely failed to point out any statutory language which

exhorts a direct *command* on the Secretary to act affirmatively in some explicit manner. Without some reference to a section of the Act which plainly prescribes the Secretary's duty in language free from doubt and equivalent to a positive command, the complaint fails to state a cause of action upon which mandamus relief may be granted. U. S. ex rel. Girard Co. v. Helvering, 301 U.S. 540, 543, 57 S.Ct. 855, 81 L.Ed. 1272 (1937); Wilbur v. United States, 281 U.S. 206, 218–219, 50 S.Ct. 320, 74 L.Ed. 809 (1930); Richardson v. United States, 465 F.2d 844, 849 (C.A.3, 1972). Indeed, the complaint completely fails to specify any particular ministerial act devoid of the exercise of judgment and discretion which the Commonwealth seeks to require the Secretary to perform. Consequently, the Commonwealth's complaint is reduced to a general request that this Court oversee the entire operation of the National Flood Insurance Act; a state of affairs even the Commonwealth concedes is not within the jurisdiction of this Court. Accordingly, the mandamus action against the Secretary of HUD will be dismissed.