424 P.2d 733

**W. L. DAVIS, Plaintiff-Appellant,**

v.

**NELSON–DEPPE, INC., Defendant-Respondent.**

**No. 9815.**

Supreme Court of Idaho.

March 6, 1967.

464

Cunningham, Schwartz & Doerr, Twin Falls, for appellant.

Parry, Robertson & Daly, Twin Falls, for respondent.

McFADDEN, Justice.

W. L. Davis, plaintiff, the owner and operator of a tractor-trailer combination, brought suit to recover damages to his equipment occasioned when it went off a portion of U. S. Highway No. 93, then under reconstruction and repair by the defendant, Nelson-Deppe, Inc. The case was tried before a jury and following a verdict in favor of the defendant, judgment was entered thereon, from which judgment this appeal was perfected.

Briefly, the facts leading to this litigation show that the defendant company had entered into a contract with the State of Idaho through the Department of Highways to recondition and resurface 6.75 miles of U. S. Highway No. 93 in Jerome County. Incorporated into the contract were certain of the Idaho Department of Highways "Standard Specifications for Highway Construction," including the requirements to be followed in erecting appropriate signs, barricades and warning devices, which devices were required by the "Standard Specifications" to meet the specifications provided by the "Manual of Uniform Traffic Control Devices" as appeared in the 1961 edition published by the Bureau of Public Roads.

On August 8, 1962, the day of the accident, the defendant was engaged in preparing a "road-mix" of gravel and oil, along a portion of the highway. Before the end of the day's shift, the road-mix was bladed up to form a rick or windrow of the road-mix surfacing material in the center of the twenty-four foot highway. This rick was about eight feet in width at the bottom, about two feet high, and sloped to a peak. The north-bound traffic was required to travel in an eight-foot lane on the east of the rick and the south-bound traffic was required to travel in an eight-foot lane on the west. A thirty-inch warning sign, on which was printed "Road Construction Ahead," was placed on the south end of the rick, with a small red reflector and a kerosene flare pot immediately in front of the sign. Following the accident involved herein, the sign was found face down on the roadway with its face blackened as though by burning and the flare pot unlit.

On the day of the accident the plaintiff, an independent trucker operating a diesel truck and refrigerated semi-trailer, was engaged in transporting a load of fresh, mixed produce from California to a Canadian destination and had arrived in Twin Falls earlier on the evening of the accident. The plaintiff and his relief driver

stopped at a coffee shop, and when they left, the plaintiff started driving the equipment. After leaving Twin Falls, plaintiff drove north on Highway No. 93 and entered the construction zone after dark. Plaintiff testified that he was driving, his relief driver riding alongside him, and they stopped, as required, when they arrived at the intersection of Highway 25 with Highway 93. They then entered the construction zone of Highway 93, climbing up a slight grade at about twenty miles per hour. He stated that he observed a sign reading "Road Under Construction," that he continued on at about thirty to thirty-five miles per hour and observed a sign reading "35 Miles an Hour Beware of Flying Rocks"; that the road was newly laid of oil-gravel mix, very black, which absorbed the rays of his headlights. He continued on about a mile further when his truck suddenly veered to the left over and across the rick of road-mix surfacing material, across the south-bound lane of travel, and came to a stop off the highway some short distance away with his truck and trailer badly damaged.

Subsequent investigation revealed that the left front wheel of plaintiff's truck had sunk into the rick of the gravel-oil material piled in the center of the highway and that the truck had swerved to the left over this rick and then off the highway. Neither plaintiff nor his driver saw this rick until after the accident. Neither they nor the investigating police officer saw the warning devices placed by the defendant at the end of the rick until after the accident when they went to investigate the rick.

At the trial, the construction contract between the defendant and the Department of Highways, with the Department of Highways' "Standard Specifications for Highway Construction," and Bureau of Public Roads' "Manual on Uniform Traffic Control Devices" were admitted into evidence for the limited "purpose of showing circumstances which might be con-

sidered by the jury in arriving at the duty of due care owed by the defendant. * * "

Plaintiff's paramount contention is that the trial court erred in denying his motion to amend his amended complaint to allege a claim for relief based on the theory that he .was a third party beneficiary under the contract between the defendant and the Department of Highways and was thus entitled to maintain an action for damages based upon the breach of this contract. In particular, plaintiff points out that the defendant failed to comply with the requirements of the "Standard Specifications" and manual on "Uniform Traffic Control Devices," asserting that defendant did not maintain any "Road Construction 500 Feet" sign of forty-eight inches dimension; that the sign placed on the windrow was not reflectorized and was found lying face down and the torch was unlit and inadequate to illuminate the sign. He further contends that there were no barricades placed in front of the windrow of blacktop material in the middle of the highway and that there was a breach of the requirements of the contract properly to illuminate.

Plaintiff asserts that "in addition to the duties the common law places on Nelson-Deppe, this defendant has, *by its own contract*, assumed certain specific duties which are for the benefit of third parties, and these third parties may base claims against the defendant for damages arising from the breach of these covenants." In support of this assertion, plaintiff argues that any other construction of the agreement would make the provisions of the contract requiring compliance with the specific items as to signs, warnings, markings, barriers, etc., wholly meaningless, since the only persons that would be harmed by failure to comply with these provisions would be members of the traveling public using the highway.

It would appear from the contention of the plaintiff that he would have this court impose an absolute duty of care on the part of the contractor gauged by the contract requirements, regardless of the re-

quirement of causation between breach and damages and regardless of what would be the common law standard of reasonable care.

Cases cited by the plaintiff in support of his theory include Anderson v. Rexroad, 175 Kan. 676, 266 P.2d 320 (1954). Therein that court considered the sufficiency of a complaint by a third party for damages arising from destruction of his house by fire, allegedly caused by a contractor severing a gas line; the contractor had specifically agreed to *"be liable for all damages to buildings * * * or other property * * *."* In that case the primary issue was whether a third party was entitled to maintain an action on the contract. That court held the complaint was sufficient. However, in Earl E. Roher Trans. & S. Co. v. Hutchinson Water Co., 182 Kan. 546, 322 P.2d 810 (1958), the Supreme Court of Kansas distinguished the case of Anderson v. Rexroad, supra, when it considered a claim by a citizen for damages for loss by fire of his property against a franchised water company which had agreed with the city to maintain certain water pressure, the plaintiff claiming breach of these agreements by failure to furnish water pressure agreed upon. In denying the plaintiff's contention that it was a third party, entitled to maintain the action, the Supreme Court of Kansas reaffirmed the holding in Anderson v. Rexroad, but pointed out that in the Anderson case there was clearly a third party beneficiary contract, whereas in the Earl E. Roher Trans. & S. Co. case there was nothing of that nature in the contract between the water company and the city.

Plaintiff also cites the case of City of Brooklyn v. Brooklyn City R.R. Co., 47 N.Y. 475, 7 Am.Rep. 469, (Ct.App.N.Y. 1872). There the plaintiff city brought suit against the defendant railroad company to recover sums paid by the city on a judgment brought against it arising from injury to a citizen occasioned by a defective street. The issue before the court was whether the city could enforce a pro-

vision of the contract between the railroad company and the city that the railroad company would keep the city's streets in repair. The court held that the railroad company was liable to the city for such neglect. The rights of a third party to maintain the action were not involved.

The case of Marion County Const. Co. v. Claycomb, 52 Ind.App. 681, 98 N.E. 744 (1912), also cited by appellant, does not in our opinion aid the plaintiff in his contentions. The issues before the court in that case involved the sufficiency of the evidence to sustain a special verdict in favor of the plaintiff. It can hardly be considered as authority for the proposition for which it is cited. Therein the court discussed the duty of a party causing an excavation to use reasonable care in protecting persons lawfully using such street from injury on account of such excavation. It can hardly be construed as authority for plaintiff's position that a third party may maintain a contract action on a construction contract for damages received.

Sutro Co. v. Paramount Plastering, Inc., 216 Cal.App.2d 433, 31 Cal.Rptr. 174 (1963), also cited by plaintiff, contains general language pertaining to third party contracts with which we have no quarrel, but that case involved a lender's claim in interpleader. The appellate court affirmed the holding of the trial court to the effect that where a construction loan agreement provided that loan proceeds were to be used exclusively to pay bills and claims for labor and material and that the last part of the loan would be paid when the owner established that all costs of labor and material and other expenses had been fully paid, and the owner defaulted in paying for labor and material, the balance of loan proceeds constituted a trust fund for the benefit of claimants who had rendered services or delivered materials. Again this case is hardly authority for plaintiff's contention.

In the annotation cited by plaintiff, 69 A. L.R. 522, it is recognized that there is a conflict in authorities on this point. Close examination of the cases supporting the plain-

tiff's position, however, reveals that a number of· the cases merely hold that a contractor was liable not only for the "tort" arising from the breach of the·contractual provisions but also for his common law liability for negligence in failing to maintain the proper guards, barricades and warnings to protect travelers. In other words, even in those cases the cause of action is one based on the "tort" theory, as opposed to a "contractual theory."

■ Idaho has recognized the "tort" liability of a contractor for failure to maintain a due standard of care in erecting barricades, maintain proper guards and giving proper notice of construction or hazards created by construction. See: Pittman v. Sather, 68 Idaho 29, 188 P.2d 600; Hoffman v. Barker, 80 Idaho 372, 330 P.2d 978.

■ Idaho, as practically all jurisdictions, 17 Am.Jur.2d 722, Contracts § 302, recognizes the right of a "third party" to maintain an action on a contract executed for the benefit of such third party. Jones v. Adams, 67 Idaho 402, 182 P.2d 963; Ashbauth v. Davis, 71 Idaho 150, 227 P.2d 954, 32 A.L.R.2d 361. See also Dawson v. Eldredge, 84 Idaho 331, 372 P.2d 414. I.C. § 29–102 is statutory recognition of the right of a third party to maintain an action on a contract made for his benefit, such section providing:

"A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it."

This statutory provision by its terms also recognizes the necessity that the contract be made expressly for the benefit of the third party, and the question whether a particular contract was intended by the parties to be for the benefit of a third person is generally regarded as one of construction of the contract. 17 Am.Jur.2d 728, Contracts § 304. Restatement Contracts §§ 133–136.

■ Absent a manifested intent to the contrary, construction contracts between· a contractor and a state or other public body for highway repair or construction of a new highway are generally not considered as being for the benefit of third persons, but are, on the one hand, for the benefit of the State in the performance of its duties to maintain highways on behalf of the public, and, on the other hand, for the benefit of the contractor by way of compensation to be paid.

Restatement of Contracts, § 145, recognizes this principle in the following statement:

"A promisor bound to the United States or to a State or municipality by contract to do an act or render a service to some or all of the members of the public, is subject to no duty under the contract to such members to give compensation for the injurious consequences of performing or attempting to perform it, or of failing to do so, unless,

(a) an intention is manifested in the contract, as interpreted in the light of the circumstances surrounding its formation, that the promisor shall compensate members of the public for such injurious consequences,"

■ Examination of the provisions of the contract between the State and the defendant fail to disclose any manifested intent that members of the public were to secure any rights thereunder for damages that may have arisen by reason of the defendant's failure to comply with its specific terms. The contract itself, however, does provide that the state may enforce such contract provisions by notice to the contractor, and in the event of failure to comply with such notice, the State then may correct the deficiency in performance and charge the costs back against payments due the contractor.

It is thus our conclusion that the trial court correctly denied the plaintiff's motion to amend the complaint.

■ Regarding plaintiff's assignment of error directed to the trial court's admitting the construction contract into evidence for the limited purpose of showing a circumstance which might be considered by the jury in determining the standard of care the defendant owed to the plaintiff, it is our

468

conclusion the trial court did not err in this regard. Numerous jurisdictions when faced with a similar question have excluded admission of such contracts for any purpose in actions between third parties and the contractors. Illustrative of the reasoning leading to this conclusion are the following cases: Wymer-Harris Const. Co. v. Glass, 122 Ohio St. 398, 171 N.E. 857, 69 A.L.R. 517 (1930); Pinnix v. Toomey, 242 N.C. 358, 87 S.E.2d 893 (1955); Hansen v. Clyde, 89 Utah 31, 56 P.2d 1366, 104 A.L.R. 943 (1936); McClendon v. T. L. James & Co., 231 F.2d 802 (5th Cir. 1956). Cases from jurisdictions which admit such contracts into evidence for the limited purpose of having its provisions considered with other evidence to determine whether due care has been exercised are: Williams v. Tillett Bros. Const. Co., 319 F.2d 300 (6th Cir. 1963); Foster v. Herbison Const. Co., 263 Minn. 63, 115 N.W.2d 915 (1962); Dornack v. Barton Const. Co., 272 Minn. 307, 137 N.W.2d 536 (1965); Briscoe v. Worley, 208 Okl. 60, 253 P.2d 145 (1952); Larson v. Heintz Const. Co., 219 Or. 25, 345 P.2d 835 (1959).

In the case of Foster v. Herbison Const. Co., supra, the Supreme Court of Minnesota, in discussing the issue of admissibility of a construction contract, and the purpose for which it was to be admitted stated the following, which is most pertinent:

"Without getting into the peripheral area of rights acquired by the traveling public under such contract provisions, it would seem that when a contractor undertakes to maintain a road under construction—open to the public during the construction period—in such a way as to insure the safety of those traveling over the construction zone, such agreement has some evidentiary value in establishing what is due care. Both contracting parties have agreed on a course of conduct deemed essential for the protection of those using the highway. It is unnecessary to hold that those injured as a result of the contractor's failure to do that which he agreed with the state he would

do have any rights under the contract. A recognition by the contracting parties that certain acts should be done to protect the traveling public—followed by failure to perform such acts—does however have some bearing on the establishment of negligence. The ultimate question still is: What would an ordinarily prudent person have done under the same or similar circumstances? But here we might well say that an ordinarily prudent person, having agreed to perform certain acts for the protection of the public, would have recognized the necessity of complying therewith and that, when injury results from a condition which develops due to the failure to perform according to the contract, it could be found that the failure to perform constitutes a lack of due care. We think that, whatever the reasoning may be, the better rule, and that now followed by the weight of authority, is that such contract provisions should be admitted for the jury's consideration, together with all other evidence, in determining the question of defendant's negligence." 115 N.W.2d at 919.

The reasoning of those cases where contracts are admitted into evidence for the limited purpose is the more persuasive; it is our conclusion there was no error by the trial court in limiting the purpose for which the contract was admitted into evidence, nor was there error in the trial court's instructions concerning the contract.

■ Other assignments of error pertain to testimony of the defendant company's vice-president as to his opinion as to what was necessary or proper warning for the construction being done and as to the adequacy of the method of setting the warning sign. No prejudicial error appears in the admission of this testimony, for the admission of opinion is largely discretionary with the trial court. Jensen v. Boise-Kuna Irr. Dist., 75 Idaho 133, 269 P.2d 755; Smith v. Big Lost River Irr. Dist., 83 Idaho 374, 364 P.2d 146. Here the witness was shown to be an operator and construction worker for many years, that he was the

superintendent on the construction job in question, that he was thoroughly familiar with the problems involved. Qualifications of this witness were fully shown to justify a conclusion that he could testify as an expert witness. Bell, Handbook of Evidence, Ch. 3 (1957).

 Plaintiff also takes issue with the trial court's admission into evidence, over his objection, of the testimony of the project chief for the State Highway Department. Mr. Morris, the witness in question, was shown to be fully qualified as an expert. Whether or not a witness is qualified to testify as an expert is largely in the discretion of the trial court. Hobbs v. Union Pacific R.R. Co., 62 Idaho 58, 108 P.2d 841. This witness gave his opinion as to whether the sign, delineator and flare pot met the requirements of the state for marking the windrow. The fact that the answer was the witness's opinion on one of the ultimate issues for resolution by the jury does not make the admission of such evidence error of a wholly prejudicial nature. Jones v. City of Caldwell, 20 Idaho 5, 116 P. 110, 48 L.R.A.,N.S., 119; Cochran v. Gritman, 34 Idaho 654, 203 P. 289; Hayhurst v. Boyd Hospital, 43 Idaho 661, 254 P. 528; Dedman v. Oregon Short Line R.R. Co., 57 Idaho 160, 63 P.2d 667; Mason v. Hillsdale Highway District, 65 Idaho 833, 154 P.2d 490. The court's ruling on admission of this testimony cannot be considered prejudicial, inasmuch as plaintiff's cross-examination laid the foundation for the particular question to which the questioned answer was responsive.

Assignments of error are directed to the giving of certain instructions by the trial court and the refusal of certain of plaintiff's requested instructions. Examination of the instructions given and requested reflect no prejudicial error committed by the trial court.

The judgment of the trial court is affirmed. Costs to respondent.

TAYLOR, C. J., and SMITH, McQUADE and SPEAR, JJ., concur.