(630 P.2d 179)

No. 51,825

JERRY LEWIS, d/b/a BOULEVARD EQUIPMENT RENTAL AND ROBERT L. LIVINGSTON AND EUGENE LIVINGSTON, d/b/a TRIANGLE RESTAURANT, *Appellants and Cross-Appellees*, v. GLOBE CONSTRUCTION CO., INC., *Third-Party Plaintiff-Appellee and Cross-Appellant*, v. O. D. TURNER, SECRETARY OF TRANSPORTATION, STATE OF KANSAS; and CITY OF WICHITA, KANSAS, *Third-Party Defendants-Appellees*

Petition for review denied July 15 and July 27, 1981

Opinion filed June 19, 1981.

*James R. Roth,* of Woodard, Blaylock, Hernandez, Pilgreen & Roth, of Wichita, for appellant and cross-appellee Jerry Lewis.

*Christopher J. Redmond,* of Redmond, Redmond & O'Brien, of Wichita, for appellants and cross-appellees Robert L. Livingston and Eugene Livingston.

*James J. McGannon,* of Regan & McGannon, of Wichita, for appellee and cross-appellant Globe Construction Co., Inc.

*Thomas R. Powell,* of Wichita, for appellee City of Wichita.

*John W. Strahan,* First Assistant Attorney, Kansas Department of Transportation, for appellee O. D. Turner, Secretary of Transportation, State of Kansas.

Before JUSTICE MILLER, Presiding, REES, J., and STEVEN P. FLOOD, District Judge, assigned.

MILLER, J.: The plaintiffs, Jerry Lewis, Robert L. Livingston and Eugene Livingston, appeal from various rulings and from the final judgment entered in the Sedgwick District Court, following a jury trial in this action for breach of contract and for damages. The controlling issues are: (1) Was there such a taking as would justify an action by plaintiffs in the nature of inverse condemna-

tion? and (2) Are plaintiffs third-party beneficiaries under the terms of a street improvement contract? In order to consider these questions in the proper context, we must first state the facts in some detail.

Lewis was the proprietor of a business known as Boulevard Equipment Rental, and the Livingstons were the proprietors and operators of the Triangle Restaurant in Wichita, Kansas. Both businesses were operated on leased premises located on the east side of George Washington Boulevard, between Harry and Hillside Streets, in the Triangle Plaza Shopping Center. Direct access to both businesses was available from George Washington Boulevard.

The City of Wichita, in early 1974, determined that it was necessary and desirable to improve George Washington Boulevard by widening it from two to four lanes, with a mountable median, by rebuilding the drainage facilities, and by reconstructing the entrances to adjacent properties. For reasons not here important, the city entered into an agreement with the State Highway Commission (now the Department of Transportation) whereby the Commission agreed to serve as agent for the city during the course of the project. Plans were prepared, advertisements for bids were published, and on June 10, 1974, Globe Construction Co., Inc., the successful bidder, entered into a contract with the State Highway Commission to make the improvements. The contract includes the plans and specifications as an integral part. On page 4 of the plans appears the following construction sequence note:

"CONSTRUCTION SEQUENCE

. . . .

"HILLSIDE TO HARRY

"The storm drain and grading and surfacing work between Hillside and Harry shall be sequenced so that either the southbound or northbound two lanes are completed prior to commencing construction of the other two lanes and center lane. Parking lot reconstruction Rt. Sta. 59+71 to Sta. 62+00 shall be done in conjunction with the work on the southbound lanes.

"The above described construction sequence may be modified at the approval of the engineer. Any construction sequence shall maintain local traffic to the businesses between Hillside and Harry."

The specifications include the then current State Highway Commission's Standard Specifications for State Road and Bridge Construction (1973 ed.). Section 107.21 of those standard speci-

fications includes a clause denying intent on the part of the contracting parties to create any third-party beneficiary under the contract. That section reads:

"107.21 THIRD PARTY BENEFICIARY - It is specifically agreed between the parties executing this Contract that it is not intended by any of the provisions of any part of the Contract to create the public or any member thereof a third party beneficiary hereunder, or to authorize any one not a party to this Contract to maintain a suit for personal injuries or property damage pursuant to the terms or provisions of this Contract. The duties, obligations and responsibilities of the parties to this contract with respect to third parties shall remain as imposed by law."

R. W. Linn, Wichita City Engineer, notified the occupants of the properties on George Washington Boulevard between Harry and Hillside, on July 10, 1974, that paving work would begin on July 17, 1974, and that the boulevard would be closed between Hillside and Harry Streets. Globe began work on the project, and on July 17, put up barricades which closed the boulevard to through traffic between Hillside and Harry. According to the evidence, local traffic was maintained along the east side of George Washington Boulevard from three days to four weeks after the barricades were erected. There is no dispute, however, that the parking lots in front of plaintiffs' businesses were torn up by mid August, and entry into those lots by motor vehicles was no longer possible. The restaurant closed between a few days to two weeks after the barricades were put up on July 17. Access to plaintiff's business was possible off of Harry and Hillside streets, through the shopping center parking lot, by using a circuitous route behind some of the other stores in the shopping center; this route was not convenient. Plaintiff Lewis installed signs, indicating the route to his business; the Livingstons did not, but simply closed their restaurant. Both businesses suffered, and plaintiffs claim damages for loss of business due to the temporary closing of the street. George Washington Boulevard was closed to all traffic for about 60 days during the course of construction; local traffic was able to use the street after the middle of October, and the work was accepted as completed upon the issuance by the Highway Commission of a formal "Notice of Acceptance" to Globe on November 15, 1974.

Lewis and the Livingstons commenced this action on May 5, 1976, by filing suit against Globe Construction Co., claiming that they were third-party beneficiaries of the construction contract,

and more specifically under the note appearing on page No. 4 of the plans; they contended that Globe breached the contract by violating the plan note; and they sought damages. Globe answered and denied that plaintiffs were third-party beneficiaries under the contract, denied that Globe breached the contract, denied liability, and denied the nature and extent of the damages claimed. Globe also filed a third-party petition, naming the City of Wichita, and the Secretary of Transportation as successor to the State Highway Commission, as third-party defendants; Globe sought a judgment over against the third-party defendants in the event that plaintiffs recovered judgment against Globe. Plaintiffs then filed an amended petition, reasserting their claims for breach of contract as against Globe and adding claims against the City and the Secretary in the nature of inverse condemnation, for taking access to plaintiffs' businesses without compensation. The City and the Secretary filed separate answers, denying all claims against them. The trial court (1) directed verdicts against Globe on its third-party claims against the City and the Secretary; (2) granted summary judgment in favor of the City and the Secretary on plaintiffs' inverse condemnation claims; and (3) permitted plaintiffs' action against Globe for damages for breach of contract to go to the jury. The jury returned a verdict in favor of the Livingstons for $0 and costs, and a verdict in favor of Lewis for $5,000 and costs. This appeal followed.

Was there such a taking as would justify an action by plaintiffs against the City and the Secretary in the nature of inverse condemnation? The taking complained of is the temporary deprivation of direct access from George Washington Boulevard to the parking lots in front of plaintiffs' businesses during construction. It is a common fact of life that street, road or highway repairs may result in loss of access to the abutting properties for from a few hours to a few months, during the repair or construction process. Our issue here is whether such a taking is compensable.

Inverse condemnation proceedings have been recognized by Kansas courts for many years. One of the early cases on the subject is *Cohen v. St. L., Ft. S. & W. Rld. Co.,* 34 Kan. 158, 162-63, 8 Pac. 138 (1885). The railroad had built its line across plaintiff's land, to which the railroad held no title. Justice Valentine, speaking for a unanimous court, said:

"[W]here a railroad company has constructed and is operating its railroad through

a piece of land belonging to another, without having first obtained a right-of-way by any formal condemnation proceedings, and without having procured any title to the land or any easement therein, the owner of the land may waive formal condemnation proceedings, and all formal modes of transfer, and elect to regard the action of the railroad company as taking the property under the right of eminent domain, and may commence an ordinary action to recover compensation for all the damages which he has sustained by reason of the permanent taking and appropriation of the right-of-way by the railroad company. We think such an action may be maintained."

In *State Highway Comm. v. Puskarich,* 148 Kan. 388, 83 P.2d 132 (1938), the court held that where the landowner brought suit against the county for the value of a 47½ foot strip of land taken for highway purposes, judgment for $3,495 was entered by the district court, and that judgment was paid by the county, then the satisfaction of the judgment operated to pass title to the strip of land appropriated by the county for public use. Even though the title was not fee simple absolute, but a fee determinable limited by the use for which the land was acquired, the court held that the appropriation was sufficient to support an action on the implied contract for the value of the land. See also *Atchison v. State Highway Comm.,* 161 Kan. 661, 171 P.2d 287 (1946), where the court held that the landowners had an action for compensation when the State Highway Commission took lands, to which it had no title, for use as a drainage ditch for a state highway; *Dugger v. State Highway Commission,* 185 Kan. 317, 342 P.2d 186 (1959), an action for damages for change of the established grade of a city street, which severely impaired ingress and egress; *Sanders v. State Highway Commission,* 211 Kan. 776, 508 P.2d 981 (1973), holding that the landowners had valid claims in inverse condemnation where the State Highway Commission had appropriated their rights to lateral support, thereby causing the landowners' back yards to crumble and slide into the adjacent highway right-of-way; and *Ventures in Property I v. City of Wichita,* 225 Kan. 698, 714, 594 P.2d 671 (1979), holding that the city's requirement that the owner of land hold a portion thereof and preserve it "in its undeveloped state for possible highway purposes at some indefinite date in the distant future," resulted in a taking for which the city is required to respond in damages in an inverse condemnation action.

As to the right of access of the owner of land abutting a public highway, we have held that:

"[T]he owner of land abutting on a street or highway has a private right in such street or highway, distinct from that of the public, which cannot be taken or materially interfered with without just compensation. However, the rights of an abutting owner must be subordinated to the right of the public to the proper use of the highway and the right of governmental agencies to enforce proper police regulation. The right is subject to reasonable regulation and restrictions for the purpose of providing reasonable safe passage for the public, but the regulations or limitations cannot be enforced where they unduly limit or unreasonably interfere with the rights of the abutting owners." *Brock v. State Highway Commission,* 195 Kan. 361, 367, 404 P.2d 934 (1965).

See also *Ray v. State Highway Commission,* 196 Kan. 13, 410 P.2d 278, *cert. denied* 385 U.S. 820 (1966); *McCall Service Stations, Inc., v. City of Overland Park,* 215 Kan. 390, 524 P.2d 1165 (1974); and *Kohn Enterprises, Inc. v. City of Overland Park,* 221 Kan. 230, 559 P.2d 771 (1977).

Access in the present case was restricted or blocked temporarily during construction. No permanent change was effected by the permanent closing of existing entrances, by declaring the thoroughfare a limited access facility, or by the building of raised curbs along the property line, as is found in some of the cited cases. The access loss was temporary, during the construction period. There is no claim that the work was illegal, or that it was not pursued diligently and completed within a reasonable length of time.

In *Farrell v. Rose,* 253 N.Y. 73, 170 N.E. 498 (1930), the New York Court of Appeals, in a similar case, said:

"The highway is continually being dug up for . . . sewers, gas mains, repairs and the like. The inconvenience and damage which a property owner suffers from these temporary obstructions are incident to city life and must be endured. The law gives [the adjoining landowner] no right to relief, recognizing that he recoups his damage in the benefit which he shares with the general public in the ultimate improvement which is being made. The law, however, does afford him a relief, if the city or a contractor interferes with the highway without authority; or, if acting legally, prolongs the work unnecessarily or unreasonably. The obstruction of streets and highways, or the work carried on in them of a public nature, must be reasonable and necessary for the public improvement which is being made." p. 76.

The Supreme Court of Oklahoma reached a similar conclusion in *Oldfield v. City of Tulsa,* 170 Okla. 329, 41 P.2d 71 (1935), where it held that:

"[A] municipal corporation may temporarily inconvenience citizens and property owners by the construction of public improvements." 170 Okla. at 331.

The rule is stated in 39 Am. Jur. 2d, Highways, Streets and Bridges § 308, pp. 691-92, as follows:

"The public authorities may close a street or other highway temporarily for the purpose of improving or repairing it . . . .

"The inconvenience and damage which a property owner suffers as a result of temporary obstructions caused by improvement or repair of the way are incident to urban life, and must be endured."

*Ray v. State Highway Commission,* 196 Kan. at 16, discusses the power of the State Highway Commission to exercise the right of eminent domain, and its power to regulate within the police power of the state. The opinion states:

"It must be recognized that these two types of power which the Commission exercises are mutually exclusive polestars with different legal consequences. The use of one incurs liability for compensation, but the other does not. An act by the Commission must be classified as an exercise of one type of power or the other. It cannot be both."

The temporary closing of a street for repair falls within the exercise of the police power, not the exercise of eminent domain. So long as the work is lawful, and is pursued with reasonable diligence, liability for damages to those whose access is temporarily restricted does not attach. We conclude that the trial court was eminently correct in granting summary judgment on plaintiffs' inverse condemnation claims against the City and the Secretary.

The next issue is whether plaintiffs are third-party beneficiaries under the terms of the contract between the State Highway Commission and Globe for street improvements, and if plaintiffs are entitled to enforce the contract in an action against the contractor, Globe. The discussion of third-party beneficiaries in *Martin v. Edwards,* 219 Kan. 466, 548 P.2d 779 (1976) is helpful and pertinent:

"Generally, where a person makes a promise to another for the benefit of a third person, that third person may maintain an action to enforce the contract even though he had no knowledge of the contract when it was made and paid no part of the consideration (*Burton v. Larkin,* 36 Kan. 246, 13 Pac. 398; *Anderson v. Rexroad,* 175 Kan. 676, 266 P.2d 320). But it is not everyone who may benefit from the performance of a contract between two other persons, or who may suffer from its nonperformance, who is permitted to enforce the contract by court action. Beneficiaries of contracts to which they are not parties have been divided into three classes: Donee beneficiaries, creditor beneficiaries and incidental beneficiaries. Only those falling within the first two classes may enforce contracts made for their benefit (17A CJS, Contracts, § 519 [4] b., p. 964; Accord: *Burton v.*

*Larkin, supra*). These third person beneficiaries are defined in 2 Williston on Contracts, 3d ed., § 356, as follows:

" '. . . (1) Such person is a donee beneficiary if the purpose of the promisee in obtaining the promise of all or part of the performance thereof, is to make a gift to the beneficiary, or to confer upon him a right against the promisor to some performance neither due [nor supposed] or asserted to be due from the promisee to the beneficiary; (2) such person is a creditor beneficiary if no intention to make a gift appears from the terms of the promise, and performance of the promise will satisfy an actual [or supposed] or asserted duty of the promisee to the beneficiary; (3) such person is an incidental beneficiary if the benefits to him are merely incidental to the performance of the promise and if he is neither a donee beneficiary nor a creditor beneficiary.' (pp. 824-827.)

"(Accord: Restatement of the Law of Contracts, § 133, pp. 151-152. Restatement, Contracts, 2d, Revised Tentative Draft, 1973, § 133, pp. 285-286, divides contract beneficiaries into two classes—intended and incidental)." pp. 472-73.

Under this definition, it appears that plaintiffs are neither "donee" nor "creditor" beneficiaries; if they are third-party beneficiaries, they fall into that classification known as "incidental" beneficiaries to the contract. The *Martin* court set forth the following rules with regard to incidental beneficiaries:

"The rule respecting incidental beneficiaries is stated in 17 Am. Jur. 2d, Contracts, § 307, as follows:

" '. . . A mere incidental, collateral, or consequential benefit which may accrue to a third person by reason of the performance of a contract, or the mere fact that he has been injured by the breach thereof, is not sufficient to enable him to maintain an action on the contract. Where the contract is primarily for the benefit of the parties thereto, the mere fact that a third person would be incidentally benefited does not give him a right to sue for its breach . . .' (p. 733.)

"Various tests have been used elsewhere in drawing the line between classes of beneficiaries. In *Burton v. Larkin,* supra, this court held: 'It is not every promise made by one to another from the performance of which a benefit may inure to a third, which gives a right of action to such third person, he being neither privy to the contract nor to the consideration. *The contract must be made for his benefit as its object, and he must be the party intended to be benefited in order to be entitled to sue upon it.'* (Syl. para. 3.) (Emphasis supplied.) Under this test a beneficiary can enforce the contract if he is one who the contracting parties intended should receive a direct benefit from the contract (see anno. Contract-Enforcement by Person Benefited, 81 ALR 1271, § III *d.,* p. 1286). We think this test is sound and are content to reaffirm it. Contracting parties are presumed to act for themselves and therefore an intent to benefit a third person must be clearly expressed in the contract (*Ronnau v. Caravan International Corporation,* 205 Kan. 154, 159, 468 P.2d 118). It is not necessary, however, that the third party be the exclusive beneficiary of all the promisor's performance. The contract may also benefit the contracting parties as well (17 Am. Jur. 2d, Contracts, § 306, pp. 731-732; 17A CJS, Contracts, § 519 [4] f., p. 983)." p. 473.

Plaintiffs base their action against Globe upon their contention

that they are third-party beneficiaries under the construction sequence note set forth on page 4 of the plans, quoted in full above. Plaintiffs claim that this provision, designed to require access to plaintiffs' business during the course of construction, makes them third-party beneficiaries. The plan note, however, does not evidence any clear intent to benefit any particular person or business; access would benefit the general public as well as the proprietors of the businesses along George Washington Boulevard.

The Idaho Supreme Court, dealing with a similar situation in *Davis v. Nelson-Deppe, Inc.*, 91 Idaho 463, 424 P.2d 733 (1967), said:

"Absent a manifested intent to the contrary, construction contracts between a contractor and a state or other public body for highway repair or construction of a new highway are generally not considered as being for the benefit of third persons, but are, on the one hand, for the benefit of the State in the performance of its duties to maintain highways on behalf of the public, and, on the other hand, for the benefit of the contractor by way of compensation to be paid." p. 467.

We agree with that statement. Even though the construction sequence note in the contract before us indicates that the parties were concerned with the maintenance of some access to the businesses along the construction route, the parties to the contract made it abundantly and expressly clear that they did not intend to create contractual rights in third parties. Section 107.21 of the specifications states in no uncertain terms: "It is specifically agreed between the parties . . . that it is not intended by any of the provisions of any part of the Contract to create the public or any member thereof a third party beneficiary hereunder, or to authorize any one not a party to this Contract to maintain a suit . . . pursuant to the terms or provisions of this Contract. . . ." The contract was obviously for the benefit of the City, through its agent the State Highway Commission, for street improvement, and for the benefit of Globe by way of remuneration for its services. Any benefits to occupants of adjoining lands was merely incidental.

We conclude and hold that plaintiffs are not third-party beneficiaries under the street improvement contract, and that they are not entitled to enforce the contract or seek damages against the contractor for claimed breach thereof.

Other points raised by the parties have been considered, but need not be determined in the light of our disposition of this case.

The judgments of plaintiffs against Globe Construction Co., Inc., are reversed; the summary judgment in favor of the City of Wichita and the Secretary of Transportation on plaintiffs' inverse condemnation claims is affirmed.