**Janet QUIGLEY, Heir and Administratrix of the Estate of Larry Wayne Quigley, deceased, and Kenneth Quigley, individually, and as an heir of Kenneth Quigley, Plaintiffs,**

v.

**GENERAL MOTORS CORPORATION, Board of County Commissioners of the County of Johnson, State of Kansas, and Apac-Kansas, Inc., Defendants.**

Civ. A. No. 85–2458–S.

United States District Court,
D. Kansas.

Feb. 26, 1987.

John A. Holtmann, Bryan E. Nelson, Gerald T. Elliott, Elliott & Holtmann, Overland Park, Kan., for plaintiffs.

James E. Lockwood, Brenner, Lockwood & Peterson, Ronald C. Newman, Mustain & Newman, Chtd., Kansas City, Kan., for APAC-Kansas.

Donald D. Jarrett, Chief Legal Counsel for the Bd. of County Com'r of Johnson County, Kan., Philip S. Harness, Johnson County Counselor, Olathe, Kan., for Bd. of County Comrs.

John J. Jurcyk, McAnany, Van Cleave & Phillips, P.A., Kansas City, Kan., Arthur P. Greenfield, Richard Shapiro, Winston & Strawn, Phoenix, Ariz., Robert F. Rowe, Jr., McAnany, Van Cleave, & Phillips, P.A., Lenexa, Kan., for General Motors Corp.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on defendant APAC-Kansas, Inc.'s motions for summary judgment on plaintiffs' amended complaint and on defendant Board of County Commissioners' cross-claim for indemnity. Although the facts of this case are uncomplicated and basically uncontroverted, the legal implications arising from the facts are complex and very much in controversy. In their amended complaint, plaintiffs state that they are heirs of one Larry Wayne Quigley (decedent), who died as a result of the accident that gave rise to this lawsuit. The following facts are uncontroverted for the purposes of this motion.

Defendant APAC-Kansas, Inc. (APAC) was the successor to, and was doing business as, Reno Construction Company at the time of the relevant occurrences in this case, and these entities will be considered as one and the same. APAC contracted with the Kansas Department of Transportation (KDOT) to perform certain road work on Interstate 35 in Johnson County, Kansas. APAC subcontracted a portion of its contract to Overland Trucking Compa-

ny, including the hauling of asphalt over a certain "haul road." Overland Trucking in turn sub-subcontracted the hauling to one Clem Mason, who employed the decedent as a truck driver.

On September 14, 1983, while the decedent was hauling asphalt over the haul road pursuant to the arrangements described above, his truck left the road and burst into flames. Decedent died several months later as a result of the burns received in the accident. Plaintiffs claim that defendant APAC agreed to assume the responsibility for restoring and maintaining this particular road, that it negligently failed to do so, and that plaintiffs are therefore entitled to damages.

Janet Quigley, one of the plaintiffs in this case, filed a claim with the Kansas Division of Workers' Compensation on January 20, 1984, requesting compensation for the injury and death of decedent and reciting the same factual allegations as stated in the amended complaint in the present lawsuit. This claim attempted to name three statutory employers: Clem A. Mason, Overland Trucking Company, and APAC. On October 4, 1984, an administrative law judge for the Division of Workers' Compensation heard the matter and on May 8, 1985, rendered a decision in which APAC was held not to be the decedent's statutory employer. This decision was reviewed by the Director of the Division of Workers' Compensation. In his order dated January 14, 1986, the Director stated the following:

> 2. For purposes of the Workmen's Compensation Act, the relationship of employer and employee, on the date of accident, existed between the deceased, Larry W. Quigley, and his employer Clem A. Mason and, pursuant to K.S.A. 44–503, the employment relationship existed between the deceased and Overland Trucking Company, and, in turn, [APAC-Kansas, Inc.].
>
> ....
>
> The work Quigley was performing was work for which Overland Trucking Company and [APAC-Kansas, Inc.] had contracted to perform. The work of hauling asphalt and cold milling was also work which was necessarily inherent in and an integral part of both Overland Trucking Company's and [APAC-Kansas, Inc.'s] trade or business. See K.S.A. 44–503(a)....
>
> The impleading and indemnity mechanisms of K.S.A. 44–503, necessarily require the award of compensation in favor of Janet Kay Quigley to be made *against the closest contractor to the decedent in the chain of contractors who is able to pay the award of compensation.* Mason, the employer, is uninsured and has been dismissed, without prejudice, from these proceedings. Overland Trucking Company is closer to the deceased than [APAC-Kansas, Inc.] in the contractor chain and has secured payment of compensation benefits through the purchase of insurance. Therefore, the award of compensation shall be against Overland Trucking Company and its insurance carrier Granite State Insurance Company.

(emphasis added).

The parties had the right to appeal this decision to a Kansas district court, and in fact, one portion of the Director's order was appealed and a decision rendered in Johnson County, Kansas District Court. The holding concerning APAC's status as a statutory employer, however, was not appealed.

APAC now claims that under the principles of res judicata, it holds the status of decedent's statutory employer and is therefore immune from suit by plaintiffs, whose sole remedy is worker's compensation benefits. Defendant APAC argues that on this basis it cannot be held liable to either the plaintiffs or to the Board of County Commissioners.

Plaintiffs argue that although normally an employee cannot proceed directly against an employer outside the provisions of the Kansas Workmen's Compensation Act, an exception is applicable here. Specifically, plaintiffs claim that under the dual capacity, or "dual persona" doctrine, APAC assumed a separate and distinct duty to decedent, beyond the duties owed to an employee by his employer, when

APAC contracted to maintain the road over which decedent was traveling at the time of the accident. Plaintiffs claim that the general public was the beneficiary of APAC's duty to maintain the road, and that decedent was owed an independent duty as a member of the public traveling over a road that APAC had agreed to maintain. Plaintiffs also argue that the previous determination that defendant was the decedent's statutory employer is not binding on this court because the elements of collateral estoppel have not been satisfied. Defendant Board of County Commissioners claims indemnity protection against APAC under a third-party beneficiary theory. The Board also seeks to join in APAC's immunity against plaintiffs' suit in the event that this court holds that such immunity is warranted.

■ A moving party is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Maughan v. SW Servicing, Inc.,* 758 F.2d 1381, 1387 (10th Cir.1985). An issue of fact is "material" only when the dispute is over facts that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.,* —— U.S. ——, ——, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* The court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues. *United States v. O'Block,* 788 F.2d 1433, 1435 (10th Cir.1986). The court must also consider the record in the light most favorable to the party opposing the motion. *Bee v. Greaves,* 744 F.2d 1387, 1396 (10th Cir. 1984), *cert. denied,* 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985). The language of Rule 56(a) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* —— U.S. ——, ——, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

## I. DUAL CAPACITY/DUAL PERSONA DOCTRINES

■ The Tenth Circuit had this to say in a recent case concerning the dual capacity doctrine:

> Professor Larson, in his treatise on worker's compensation laws, explains the doctrine as follows:
>
>> Under this doctrine, an employer normally shielded from tort liability by the exclusive remedy principle may become liable in tort to his own employee if he occupies, in addition to his capacity as employer, a second capacity that confers on him obligations independent of those imposed on him as employer.
>
> 2A A. Larson, *Workmen's Compensation* § 72.80 at 14–112 (1976). This doctrine is a judicial invention in a limited number of jurisdictions, apparently developed in response to the growing hostility to the perceived inadequacies of worker's compensation awards.

*Worthen v. Kennecott Corp.,* 780 F.2d 856, 857 (10th Cir.1985). As the court noted, resolution of such an issue is purely a matter of construing the legislative acts and judicial opinions of the state. *Id.* at 859. Therefore, this court must turn to Kansas law to determine if the state courts have adopted the dual capacity exception to the worker's compensation laws.

In *Kimzey v. Interpace Corp.,* 10 Kan. App.2d 165, 694 P.2d 907 (1985), the Kansas Court of Appeals discussed the dual capacity doctrine. The relevant facts in *Kimzey* are as follows. Interpace Corp. was the successor corporation of a company that had manufactured a pyramid roll machine. Kimzey was an employee of Interpace Corp. and was operating the machine when he was injured. After receiving worker's compensation benefits from Interpace Corp., Kimzey sued his employer for injury due to negligence, design defect, and breach of warranty concerning the

manufacture of the machine. Kimzey claimed that Interpace Corp. was independently liable under the common law by reason of its agreement to assume the liabilities of the company that had manufactured the machine.

The court of appeals acknowledged the exclusivity provision of the Kansas Workmen's Compensation Act, but stated that the Kansas courts have "never been called upon to decide a case in which the employer's liability is alleged to have arisen solely from its independent assumption by contract of the obligations and liabilities of a third-party tortfeasor." *Id.* at 169, 694 P.2d at 912. The court further stated:

> When properly applied, [the dual capacity doctrine] will be limited to those exceptional situations where the employer-employee relationship is not involved because the employer is acting as a second persona unrelated to his status as an employer, that confers upon his obligations independent of those imposed upon him as an employer.

*Id.* at 170, 694 P.2d at 912. The court adopted the dual capacity doctrine and held that Interpace Corp. could not invoke the exclusivity provision of the Kansas Workmen's Compensation Act against the plaintiff.

The *Kimzey* decision is not dispositive of the issues in this case. In *Kimzey*, the court expressly noted that the employer was being sued for liability arising *solely* from its independent assumption of the liabilities of a third-party tortfeasor. In the present case, plaintiffs are not claiming damages against APAC based on the latter's assumption of liability for a third party's torts. Rather, plaintiffs claim that APAC is both the employer and primary tortfeasor, but that APAC committed the tort while under an independent duty of care unrelated to the employer-employee relationship. Thus, although the Kansas Court of Appeals did recognize a dual capacity doctrine exception to the worker's compensation laws, the facts of the two cases are clearly distinguishable. However, the law that is stated in *Kimzey*, by which the court of appeals extended the

doctrine to those cases in which the employer (1) is acting as a second persona, unrelated to its status as an employer, and (2) has conferred upon it obligations independent of those imposed through its employer status, is broad enough to warrant analysis of the doctrine's application in the present case.

The court finds that extension of the dual capacity doctrine to the facts of this case is improper. Creating dual capacity liability based on an employer's assumption of the obligations of a third-party tortfeasor must be distinguished from recovery for an employer's own tortious conduct. Courts have uniformly held that worker's compensation is the sole remedy for the latter. For example, in *Blew v. Horner*, 187 Cal.App.3d 1380, 232 Cal.Rptr. 660 (1986), the plaintiff was injured during his employment with the defendant construction company, which had contracted to do roofing on a certain project. To get around the exclusivity of the California Worker's Compensation Act, the plaintiff argued the dual capacity doctrine in the following manner. Plaintiff claimed that the defendant was also the owner and developer of the project, and in these independent capacities owed a duty to manage the property in a way to avoid harm to others. The plaintiff claimed that his employer owed this independent duty of care in addition to the duty owed to employees, and thus the employer could be sued for negligence in this second capacity.

The court held that the dual capacity doctrine was inapplicable to a defendant employer's concurrent role as an owner or occupier of land. The court found that creating dual capacity liability based on an employer's ownership of the premises would not impose any greater obligation to provide a safe place of work than already exists because of his or her role as employer. *See id.* at 667 (citing *Johns-Manville Products Corp. v. Superior Court*, 27 Cal.3d 465, 612 P.2d 948, 165 Cal.Rptr. 858 (1980) (workers compensation is the sole remedy for employee injured as a result of employer's deliberate failure to assure that the physical environment of the workplace

is safe); 2A A. Larson, Workmen's Compensation Law § 72.82 at 14–234 (1983) ("It is held with virtual unanimity that an employer cannot be sued as the owner or occupier of land, whether the cause of action is based on common-law obligations of landowners or on statutes such as safe place statutes or structural work acts.")).

Another recent example of the distinction between an employer's liability for its own negligence and its assumed liability for another's negligence is *Herron v. Pack & Co.*, 705 P.2d 587 (Mont.1985). In *Herron*, the plaintiff, who was the wife of the decedent, claimed that her husband's fatal accident was caused by his employer's negligent, improper, and insufficient maintenance of a company truck's braking system. The plaintiff invoked the dual capacity doctrine in claiming that because the defendant operated its own separate service department, it owed a separate duty of care to the deceased. The court disagreed, mainly because the operation of the truck was an incident of the decedent's employment. *Id.* at 589.

This court agrees with the preeminent legal authority on worker's compensation law, who has stated:

> In a sense, a single legal person may be said to have many capacities since that term has no fixed legal meaning. As a result, a few courts have stretched the doctrine so far as to destroy employer immunity whenever there was not a separate legal person, but merely a separate relationship or theory of liability. When one considers how many such added relations an employer might have in a course of a day's work—as a landowner, land occupier, products manufacturer, installer, modifier vendor bailor, repairman, vehicle owner, ship owner, doctor, hospital, health services provider, self-insurer, safety inspector—it is plain enough that this trend could go a long way toward demolishing the exclusive remedy principle.
>
> Since the term 'dual capacity' has proved to be subject to such misapplication and abuse, the only effective remedy is to jettison it altogether, and substitute the term 'dual persona doctrine'. The choice of the term 'persona' is not the predilection for elegant Latinisms for their own sake; it is dictated by the literal language of the typical third party statute, which usually defines a third party, in the first instance, as a *person* other than the employer. This is quite different from 'a person acting in a capacity other than that of employer.'

2A A. Larson, Worker's Compensation Law § 72.81 (1983).

While the present factual situation may involve the employer acting in a dual capacity, no dual persona status is present. The defendant owed a duty to maintain a safe workplace for its employees. The haul road in question was part of that workplace. At the time of the accident, the decedent was acting within the scope of his employment and was traveling within the area defined as the workplace. If the defendant APAC was a statutory employer of the decedent and APAC was at fault in the accident, plaintiffs' only remedy is through worker's compensation. They cannot now attempt to hold defendant liable in a negligence or breach of contract suit. Based on the *Kimzey* decision, the court believes that this holding is consistent with Kansas law. To the extent that this precludes plaintiffs from any damages to which they might otherwise be entitled, the responsibility lies with the Kansas Legislature through its passage of the Kansas Workmen's Compensation Act. However, the effect of the court's holding that the dual capacity doctrine is not available to plaintiffs must be viewed in light of the following discussion concerning whether APAC should even be considered an employer of the decedent.

## II. APAC AS STATUTORY EMPLOYER

Plaintiffs claim that notwithstanding the applicability of the dual persona doctrine, the determination in the previous worker's compensation proceeding that APAC was the statutory employer of Larry Quigley is not entitled to preclusive effect in the present action. Such a finding would free the plaintiffs of the limitation imposed by the Kansas worker's compensation laws.

Both parties appear to agree that the doctrine of collateral estoppel (issue preclusion) as stated in *Bud Jennings Carpets & Draperies, Inc. v. Greenhouse*, 210 Kan. 92, 499 P.2d 1096 (1972) governs this issue, although the parties differ on whether the elements of the doctrine have been met.[1]

The *Bud Jennings* court stated the following:

> The doctrine of collateral estoppel may be invoked as a bar to litigating an issue when the following is shown (1) a prior judgment on the merits which determined the rights and liabilities of the parties on the issue based upon ultimate facts as disclosed by the pleadings and judgment, (2) the parties must be the same or in privity therein and (3) the issue litigated must have been determined and necessary to support the judgment.

*Id.* at 96, 499 P.2d at 1100 (citation omitted). Regardless of whether (1) and (2) can be established in this case, the court finds the requirements of element (3) have not been met. The finding that APAC was the statutory employer of decedent was not necessary to support the administrative agency's judgment. The Director of the Kansas Division of Workers' Compensation determined that Overland Trucking Company, which was one step closer to decedent in the chain of contractors than APAC, had the ability to pay, and was therefore liable to the plaintiff for worker's compensation benefits. Since a contractor with a closer employer-employee relationship was present and was found liable, the Director's decision that defendant was a statutory employer was unnecessary to support the judgment. The Director could have considered the chain of contractors and their ability to pay benefits and reserved the determination of "statutory employer" status until it became necessary to bind the particular employer to a judgment for worker's compensation benefits.

At least one Kansas court has discussed this third element of collateral estoppel. In *Neville v. Hennigh*, 214 Kan. 681, 522 P.2d 443 (1974), the court stated, "If a judgment could not have been rendered without deciding a particular matter, that matter will be settled as to all future actions between the parties involving the same subject matter." *Id.* at 688, 522 P.2d at 449. In the present case, the Director's judgment against Overland Trucking Company could have been rendered without deciding that APAC was a statutory employer of the decedent. Specifically, the Director could have found that the work of hauling asphalt and cold milling was necessarily inherent in and an integral part of Overland Trucking Company's trade or business without extending that finding to APAC. Plaintiff's recovery of worker's compensation benefits would not have been affected if APAC was not in the business of hauling asphalt and instead was merely acting as the general contractor or project manager of the construction work. In other words, under the Kansas Workmen's Compensation Act, Overland Trucking Company's status as a statutory employer was not derivative of, or dependent upon, APAC's status. In order to find that the work being performed by Clem Mason (decedent's immediate employer) was part of "the principal's" (here, Overland Trucking Company's) trade or business, the Director needed only to establish that "(1) the work is necessarily inherent in and an integral part of the principal's trade or business; or (2) the work is such as would ordinarily have been done by the employees of the principal." *Murphy v. Owens-Corning Fiberglas Corp.*, 643 F.Supp. 269, 270 (D.Kan.1986). The status of APAC as a statutory employer would be irrelevant to this determination.

---

1. The parties also mention the issue of res judicata, or claim preclusion, though they appear to agree that collateral estoppel is the proper theory. For a discussion on the distinction between collateral estoppel and res judicata, see *Williams v. Evans*, 220 Kan. 394, 396–97, 552 P.2d 876, 878 (1976). Suffice it to note that plaintiff's claim of negligence against defendant was not presented in the worker's compensation proceeding, because establishment of an employer's duty to pay worker's compensation does not require a showing of fault. Therefore, the principles of res judicata would not apply here in any event.

The court therefore finds that plaintiff should not presently be precluded from bringing a negligence suit against APAC by reason of collateral estoppel. The court does not now express an opinion on whether APAC was in fact decedent's statutory employer, because that issue has not been presented in this case. The parties may seek a pre-trial consideration of this issue by means of a motion for summary judgment. In light of the foregoing analysis precluding a dual persona theory from the facts of this case, the determination of whether APAC was the decedent's statutory employer will be dispositive on the issue of whether plaintiff may maintain the present lawsuit against APAC. If APAC was the decedent's statutory employer, then the worker's compensation laws are plaintiffs' exclusive remedy. If APAC was not the decedent's statutory employer, the plaintiffs may proceed on a negligence cause of action.

## III. THIRD PARTY BENEFICIARY CONTRACT

Defendant APAC's motion for summary judgment on the Board of County Commissioners' cross-claim must be denied to the extent that the Board attempts to share in APAC's alleged immunity through the use of collateral estoppel. As previously noted, APAC's immunity through the effect of the worker's compensation laws has yet to be determined. Defendant APAC also claims, however, that the Board of County Commissioners' cross-claim fails to state a claim upon which relief can be granted, for the reason that the Board cannot establish itself as a third party beneficiary under APAC's contract with KDOT.[2] The Board has not responded directly to APAC's motion, but instead has filed its own motion for summary judgment. In this Memorandum and Order, however, the court will consider the motion and brief submitted by the Board insofar as they respond to APAC's motion for summary judgment.

■ Although many states and the Restatement (Second) of Contracts divide contract beneficiaries into two classes—intended and incidental—Kansas follows the old common law rule dividing beneficiaries into three classes—donee, creditor, and incidental beneficiaries. *See Cornwell v. Jespersen,* 238 Kan. 110, 115–16, 708 P.2d 515, 520 (1985). A person is a donee beneficiary if the purpose of the promisee in obtaining a promise of all or part of the performance is to make a gift to the beneficiary, or to confer upon him a right against the promisor to some performance neither due nor asserted to be due from the promisee to the beneficiary. A person is a creditor beneficiary if no intention to make a gift appears from the terms of the promise, and performance of the promise will satisfy an actual or asserted duty of the promisee to the beneficiary. *Martin v. Edwards,* 219 Kan. 466, 472, 548 P.2d 779, 785 (1976) (quoting 2 S. Williston, Williston on Contracts § 356 (3d ed. 1959)). An incidental beneficiary is self-explanatory.

The Board's arguments appear to be an attempt to fit its status within the definitions of donee *and* creditor beneficiaries. The Board first argues that while it has the responsibility to maintain county roads, APAC assumed this duty through its contract with KDOT. This appears to place the Board in the position of a creditor beneficiary. Alternatively, the Board argues that since KDOT knew that its own liability for maintenance extends only to state roads, but also knew that the County had the responsibility for maintaining county roads, the Board was intended by the parties to be a beneficiary of the contract because KDOT contracted with APAC to maintain the county road in question. This appears to rely on the donee beneficiary theory. In light of the facts of this case and the law as it exists in Kansas, the court finds that the Board was not a third party beneficiary of the contract.

■ The Board's argument that APAC assumed the duty of maintaining the roads in question misconstrues Kansas law. "One ... *nondelegable* duty is that requiring a governmental entity to maintain its

---

**2.** The plaintiff has denied that it is also proceeding under a third party beneficiary contract theory. Therefore, APAC's argument on this issue as it relates to plaintiff is moot.

highways in a reasonably safe condition for the traveling public." *Trout v. Koss Construction Co.*, 240 Kan. 86, 93, 727 P.2d 450, 455 (1986) (emphasis added).[3] The *Trout* court also stated that the fact that a contractor has been engaged to perform work on a public way does not relieve the governmental entity from responsibility for injuries arising from the contractor's negligence, if the governmental entity has itself failed to maintain the highway in a reasonably safe condition for the public. *Id.* However, the governmental entity may *not* be liable for the independent torts of a third party tortfeasor/contractor when it had no notice of the contractor's conduct or the resulting dangerous condition. *Id.* at 91, 727 P.2d at 454. Thus, the Board's creditor beneficiary theory is flawed.

The Board also appears to rely on an inference of the intent of the parties to make the Board a donee beneficiary of the contract. The Kansas courts have also addressed this theory. In *Lewis v. Globe Construction Co.*, 6 Kan.App.2d 478, 630 P.2d 179 (1981), the Kansas Court of Appeals discussed the issue of third party beneficiary in a situation involving a highway construction contract. In *Lewis*, the City of Wichita needed street repair work done and arranged for the Kansas State Highway Commission to serve as the City's agent during the course of the project. The Commission contracted with Globe Construction Company to make the needed improvements. The contract between the Commission and the construction company contained the following clause, which is *identical* to a provision in the contract between KDOT and APAC:

**107.21 THIRD–PARTY BENEFICIARY.** It is specifically agreed between the parties executing this contract that it is not intended by any of the provisions of any part of the contract to create the public or any member thereof a third-party beneficiary hereunder or to authorize anyone not a party to this contract to maintain a suit for personal injuries or property damage pursuant to the terms or provisions of this contract. The duties, obligations and responsibilities of the parties to this contract with respect to third parties shall remain as imposed by law.

In *Lewis*, the plaintiffs were businessmen whose establishments were located along the streets affected by the improvements. These plaintiffs allegedly incurred damages due to the temporary closing of the streets. The plaintiffs claimed that they were third party beneficiaries under the contract between the construction company and the state, relying in particular on a construction sequence provision in the contract that expressed the City's intention to maintain local traffic to the businesses along the affected roads. The court had the following to say concerning the third party beneficiary theory and the effect of the above contractual provision:

The Idaho Supreme Court, dealing with a similar situation in *Davis v. Nelson-Deppe, Inc.*, 91 Idaho 463, 424 P.2d 733 (1967), said:

"Absent a manifested intent to the contrary, construction contracts between a contractor and a state or other public body for highway repair or construction of a new highway are generally not considered as being for the benefit of third persons, but are, on the one hand, for the benefit of the State in the performance of its duties to maintain highways on behalf of the public, and, on the other hand, for the benefit of the contractor by way of compensation to be paid." p. 467, 424 P.2d 733.

We agree with that statement. Even though the construction sequence note in the contract before us indicates that the

---

**3.** Although the *Trout* case dealt with the state's liability, the court's analysis applies equally to municipalities and counties. The court noted that the liability of any governmental entity, such as a municipality or the state itself, is now governed by the common law negligence principles that have always applied in cases of municipal liability for highway and street defects. The passage of the Kansas Tort Claims Act meant that the liability of all governmental entities within a state, as that liability relates to streets and highways, is to be determined by common law negligence. *Id.* at 90, 727 P.2d at 453–54.

parties were concerned with the maintenance of some access to the businesses along the construction route, the parties to the contract made it abundantly and expressly clear that they did not intend to create contractual rights in third parties. Section 107.21 of the specification states in no uncertain terms:

"It is specifically agreed between the parties ... that it is not intended by any of the provisions of any part of the Contract to create the public or any member thereof a third party beneficiary hereunder, or to authorize any one not a party to this Contract to maintain a suit ... pursuant to the terms or provisions of this Contract...."

The contract was obviously for the benefit of the City, through its agent the State Highway Commission, for street improvement, and for the benefit of Globe by way of remuneration for its services. Any benefits to occupants of adjoining lands was merely incidental.

*Lewis,* 6 Kan.App.2d at 486, 630 P.2d at 185.

In light of the law stated above, this court finds that the Board of County Commissioners does not have a third party beneficiary claim under APAC's contract with KDOT. The Board argues that Section 107.21 was aimed at incidental third party beneficiaries. However, the parties to the contract did not need to worry about incidental beneficiaries because Kansas law already precluded such persons from claiming third party beneficiary status. In order to give some meaning to Section 107.21, and it is obvious that Kansas law does give it some meaning, it must be interpreted as disclaiming any potential creditor or donee beneficiary intent. Moreover, unlike the City of Wichita in the *Lewis* case, there is no evidence that the Board arranged for KDOT to be the Board's agent in this matter. At most, the Board is an incidental, or unintended, beneficiary through APAC's contractual promise resulting in the sharing of the burden and expense of maintaining a certain county road.

Although Kansas does not explicitly follow the intended-incidental beneficiary line of analysis, even in Kansas, in order to recover under a third party beneficiary theory, the claimant must be an *intended* beneficiary. *See Cornwell,* 238 Kan. at 115–16, 708 P.2d at 520–21:

The contract must be made for [the third party's] benefit as its object, and he must be the party intended to be benefited in order to be entitled to sue upon it.... Under this test a beneficiary can enforce the contract if he is one who the contracting parties intended should receive a direct benefit from the contract.... Contracting parties are presumed to act for themselves and therefore an intent to benefit a third person must be clearly expressed in the contract....

(quoting *Martin v. Edwards,* 219 Kan. 466, 473, 548 P.2d 779, 785 (1976) (emphasis omitted) (citations omitted)). Based on the contract's disclaimer and the lack of any clear evidence of an intent to benefit the Board, no third party beneficiary claim can be supported.

Because the third party beneficiary claim is the only legal theory of recovery stated in the Board's cross-claim against APAC, the court must disregard other purported causes of action or theories raised by the Board in its brief and grant defendant APAC-Kansas, Inc.'s motion for summary judgment. This holding does not prevent the Board from pursuing its attempt to join in any immunity afforded APAC through the worker's compensation laws, although the court expresses no opinion on the validity of the Board's "shared immunity" theory.

IT IS BY THE COURT THEREFORE ORDERED that defendant APAC–Kansas, Inc.'s motion for summary judgment on plaintiff's amended complaint be denied. IT IS FURTHER ORDERED that defendant APAC–Kansas, Inc.'s motion for summary judgment on defendant Board of County Commissioners' cross-claim be granted.